Filed 1/24/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re YOLANDA L. et al., Persons Coming Under the Juvenile Court Law. | B271130 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK13635) |
| Plaintiff and Respondent, | |
| v. | |
| JUAN G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Marilyn Martinez, Commissioner. Affirmed.

Landon Villavaso, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel and Jacklyn K. Louie, Deputy County Counsel for Plaintiff and Respondent.

_____

Siblings Yolanda L. and Javier L. were declared dependent children pursuant to Welfare and Institutions Code section 300, subdivision (b), removed from appellant Juan G. (father) and placed with mother.[1]  Father contends:  (1) the jurisdiction order was not supported by sufficient evidence and (2) the removal order was "not authorized by statute."  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2015, four-year-old Yolanda and six-month-old Javier lived with mother and father in Montebello.  Mother worked as a teacher in the Montebello school district.  Father was a licensed security guard and had a permit to carry an exposed firearm, but he had been unemployed for several years and was the children's primary caretaker.  Unbeknownst to the family, father was the subject of a narcotics investigation by a multi-agency task force including the Drug Enforcement Agency (DEA).  That investigation brought the family to the attention of the Department of Children and Family Services (DCFS) on September 29, 2015.  That morning, the family home was under surveillance by a task force team with a search warrant already in their possession.  The team observed three vehicles registered to that location, including a Ford F-150 truck, parked in the driveway.  Father was observed leaving the house, getting into the Ford truck and driving away.  Father was on the northbound 605 Freeway when he was pulled over by the task force, which found three pounds of crystal methamphetamine in the truck.  Father told Detective Steve Anderson that there was a gun in a bag in a hall closet at the family home.  During a search of the family home that day, Detective Anderson found a black nylon

---

[1]    All future statutory references are to the Welfare and Institutions Code.

bag in a closet in a hall between the kitchen and the bedrooms; the bag contained a loaded 9-millimeter semi-automatic handgun, extra magazines and loose ammunition; the gun bag's location on the third shelf from the bottom, about four feet up from the ground, was accessible to the children. Also during the search, a police dog "alerted" to a living room couch but "further investigation yielded negative results." Law enforcement referred the matter to DCFS for a felony child endangerment investigation and DEA agents accompanied a DCFS social worker to the family home that same day.

When the social worker arrived, the younger child, Javier, was inside the home in the care of paternal grandmother, who was visiting from Mexico. Father was being detained in a car parked in front of the house. Father admitted participating in a narcotics transaction but told the social worker that mother had no knowledge of his illegal activities. Father said this was the second time he had picked up a box containing illegal narcotics in exchange for $100. The social worker was still at the family home when mother arrived with daughter Yolanda. Mother said she had been told that father was under arrest for being in possession of illegal narcotics; mother did not use drugs and had never seen any illegal drugs at the house. Mother agreed to immediately relocate with the children to somewhere safe and to cooperate with DCFS. After discussing the matter with the law enforcement officers at the scene, the social worker concluded that mother did not know about father's illegal activities. The children were taken into protective custody and released to mother.

At the detention hearing on October 2, 2015, father was declared the children's presumed father. The juvenile court

found a prima facie case of section 300, subdivision (b) dependency jurisdiction had been established based on father's arrest for methamphetamine possession and the discovery of the loaded handgun in the hall closet, and that removal was the only reasonable means to protect the children. The children were released to mother and a jurisdiction hearing was set for November 2015. That hearing was continued, eventually to February 22, 2016.

According to the Jurisdiction/Disposition Report, mother and the children were living with maternal grandparents and the children were doing well. Mother told the social worker she never suspected father was involved in drug trafficking. She knew father owned a gun but father told her it was in a lock box; she did not know it was in the hall closet or that it was loaded (mother said that paternal grandmother told mother she observed police officers load the gun). Mother was not sure about the future of her relationship with father. She agreed that she would not allow father to live with the family if DCFS believes it would not be appropriate. Father told the social worker that he did not know about the methamphetamine found in his car; father thought he was transporting painting supplies for a friend. In any case, because the drugs were never in the house, father believed his possession of those drugs never jeopardized the children's safety. Father did not think the gun was loaded.

Father did not appear at the jurisdiction hearing on February 22, 2016.[2] The juvenile court admitted into evidence

---

[2] Father, still in custody, appeared on January 13, 2016, when the jurisdiction hearing was continued to February 22, 2016; father answered affirmatively when asked whether he understood that he was ordered to appear at the continued

4

the Detention Report, the Jurisdiction/Disposition Report and a Last Minute Information For Court Officer dated January 13, 2016, which does not appear to be in the appellate record. There was no live testimony and father, through his appointed counsel, submitted on the petition. The trial court sustained an amended petition which based section 300, subdivision (b) dependency jurisdiction on the following grounds:

"[Father] created a detrimental and endangering home environment for the children in that a loaded handgun was found in the children's home within access of the children. On 09/29/2015, the children's father possessed three pounds of methamphetamine in the family vehicle. Such a detrimental and endangering home environment established for the children by the father endangers the children's serious physical health, safety and well being and places the children at risk of physical and emotional harm."

The juvenile court explained that storing a loaded handgun "in a hallway closet on a low shelf accessible to the children in the residence" posed "an enormous risk to children, and these are young children who, just by their sheer curiosity at their age level, are placed at great risk. [¶] Furthermore, the house was being observed by law enforcement, and three pounds of methamphetamines were recovered from father's car. Father admitted to being involved in other narcotics transactions, and

_____

hearing. When father did not appear on February 22, his attorney asked for a continuance so that he could contact father, who had apparently been released from custody. The juvenile court denied the request, noting that father had been present on January 13, when he was ordered to appear on February 22. On appeal, father does not challenge the order denying a continuance.

5

his activities with such an enormous amount of methamphetamines and all of the paraphernalia that was located makes father's activities and conduct inherently dangerous. [¶] And, therefore, the children are persons described by Welfare and Institutions Code section 300, subdivision (b)."

Regarding disposition, father objected to any drug testing condition. He argued the case plan should be narrowly tailored to address the issues that led to dependency jurisdiction – father engaging in criminal activity and not properly storing items. Since jurisdiction was not based on any drug use, father argued the drug testing condition was inappropriate. DCFS countered that a drug testing condition was reasonable because the criminal activity in which father was engaged was possession and transportation of large amounts of illegal narcotics. The juvenile court found by clear and convincing evidence that there was a substantial danger to the children and no reasonable means to protect them other than removal from father's custody; it ordered the children removed only from father and remain placed with mother with family maintenance services. Father was ordered to participate in random, on-demand drug testing; if father missed a test or tested "dirty," he would have to participate in full drug rehab program with random testing. In addition, father was ordered to participate in a parenting program and individual counseling to "address case issues." Father was given monitored visits. Father timely appealed.

## DISCUSSION

### A. Standard of Review

At the first stage of dependency proceedings, the juvenile court determines whether the child is subject to juvenile court jurisdiction; DCFS has the burden to prove jurisdiction by a

6

preponderance of the evidence.  (§ 355, subd. (a).)  At the second
stage, the juvenile court must decide where the child will live
while under juvenile court supervision; to support removal from
parental custody, DCFS has the burden to prove by clear and
convincing evidence that there is a risk of substantial harm to the
child if returned home and the lack of reasonable means short of
removal to protect the child's safety.  (§ 361, subd. (c); *In re
Lana S.* (2012) 207 Cal.App.4th 94, 103, 105; see also *In re D.C.*
(2015) 243 Cal.App.4th 41, 51, 54.)

On appeal, we review both the jurisdictional and
dispositional orders for substantial evidence.  (*In re D.C., supra*,
243 Cal.App.4th at p. 55.)  In doing so, we view the record in the
light most favorable to the juvenile court's determinations,
drawing all reasonable inferences from the evidence to support
the juvenile court's findings and orders.  Issues of fact and
credibility are the province of the juvenile court and we neither
reweigh the evidence nor exercise our independent judgment.  (*In
re I.J.* (2013) 56 Cal.4th 766, 773.)  But substantial evidence "is
not synonymous with any evidence.  [Citations.]  A decision
supported by a mere scintilla of evidence need not be affirmed on
appeal.  [Citation.]  . . .  'The ultimate test is whether it is
reasonable for a trier of fact to make the ruling in question in
light of the whole record.'  [Citation.]"  (*In re Savannah M.* (2005)
131 Cal.App.4th 1387, 1393-1394, italics omitted.)

B.      *Jurisdiction*

Father contends the jurisdiction order is not supported by
sufficient evidence.  He argues the evidence of three pounds of
methamphetamine found in his car and a loaded handgun found
stored in a location at the family home that was accessible to the
children, was not sufficient to establish that the children were at

7

any risk of harm at the time of the jurisdiction hearing five months later.  According to father, "Protecting the children from potential criminal acts of retaliation is a function of law enforcement – not the function of" DCFS.  (Emphasis in original).  Father is incorrect.

The section 300 circumstance that supports dependency jurisdiction relevant here is when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of [the parent] to adequately supervise or protect the child . . . ."  (§ 300, subd. (b)(1).)  The three elements of a jurisdictional finding under section 300, subdivision (b)(1) are:  (1) neglectful conduct by the parent; (2) causation; and (3) "serious physical harm or illness" or a "substantial risk" of serious physical harm or illness.  (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1452.)  When the jurisdictional allegations are based solely on risk to the child, that risk must be shown to exist at the time of the jurisdiction finding.  (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1435.)  The juvenile court need not wait until a child is seriously injured to assume jurisdiction if there is evidence that the child is at risk of future harm from the parent's negligent conduct.  (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.)

A section 300, subdivision (b) jurisdictional finding may not be based on a single episode of endangering conduct in the absence of evidence that such conduct is likely to reoccur.  (*In re J.N.* (2010) 181 Cal.App.4th 1010 [jurisdiction could not be based on single incident of driving under the influence where there was no evidence that parents had ongoing substance abuse issues].)  But evidence of past conduct may be probative of current conditions.  (*In re James R.* (2009) 176 Cal.App.4th 129, 135–

8

136.)  To establish a defined risk of harm at the time of the hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]"  (*Id*. at p. 136.) Leaving drugs or drug paraphernalia within the child's reach is an example of negligent conduct that will support section 300, subdivision (b) dependency jurisdiction. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1651 (*Kristin H.*) [drug paraphernalia]; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 825 (*Rocco M.*) ["allowing access to drugs, with nothing to prevent [child] from succumbing to the temptation to ingest them"].)

Here, section 300, subdivision (b) dependency jurisdiction was based on two forms of neglectful conduct by father: (1) storing a loaded handgun in a location that was accessible to the children and (2) possessing the three pounds of methamphetamine found in his car.  Both forms of neglectful conduct put the children at substantial risk of suffering serious physical harm.  And although the conduct was discovered on September 29, 2015, there was substantial evidence from which the juvenile court could infer that the conduct was likely to recur and did not represent a momentary lapse in judgment.

### 1. The methamphetamine

It is undisputed that father's possession of methamphetamine on September 29th was not an isolated event. It was at least the second time father had transported illegal narcotics.  The evidence that father was involved in drug trafficking was strong: he was the subject of a drug trafficking investigation by a multi-agency task force, a large amount of narcotics was found in his possession on September 29th, he admitted he had engaged in similar conduct at least once before, his loaded gun was stored in a hall closet in the family home, and

a police dog "alerted" to a couch in the living room. The juvenile court could reasonably conclude father was more deeply involved in drug trafficking than he acknowledged to the social worker. This evidence also supported the finding that the conduct was likely to recur, and was thus, sufficient to support section 300, subdivision (b) dependency jurisdiction based on such conduct.

We are not persuaded by father's argument that there was no evidence his drug trafficking activities put the children at any risk of harm because they had not been exposed to the narcotics found in his truck. The truck was one of three vehicles registered at the family home. Even assuming only father used the truck, it was undisputed that he was the children's primary caretaker. Under these circumstances, it was reasonable for the juvenile court to infer that father's use of the truck to engage in large scale drug trafficking exposed the children to a risk of harm because they were sometimes in the truck. Further, from the evidence that father stored a loaded gun in an easily accessible location in the family home, and a police dog "alerted" to a couch in the living room, the juvenile court could reasonably conclude that father's drug trafficking activities did not occur only in the truck, but sometimes in the family home.

### 2. The loaded gun

Our independent research has found no published case, and the parties cite to none, discussing dependency jurisdiction based on a child's access to an improperly stored, loaded firearm. It takes little to persuade us that a young child with access to a loaded gun is at substantial risk of serious physical harm.

Our conclusion is supported by analogous case law involving a child's access to drugs. In *Rocco M., supra,* 1 Cal.App.4th 814, an 11-year-old child testified at a

10

jurisdictional hearing that he had found illegal drugs and paraphernalia in the bathroom of his home.  (*Id.* at p. 817.)  The court held that, as matter of law, a child's ingestion of illegal drugs constitutes "serious physical harm" for purposes of section 300.  (*Id.* at p. 825.)  The court further concluded that evidence mother left the drugs in a location where they were available to the child supported the finding the child was exposed to a substantial risk of serious physical harm.  (*Ibid.*; see also *Kristin H., supra,* 46 Cal.App.4th at p. 1651 ["leaving drug paraphernalia within [the child's] reach, indicated a gross lack of attention to the child's welfare"].)

By analogy to the drug access cases, we hold that section 300, subdivision (b) dependency jurisdiction may be based on evidence that the parent stored a loaded gun in such a manner that it could be accessed by a child.  Such conduct indicates "a gross lack of attention to the child's welfare" with potentially greater repercussions than leaving drugs and paraphernalia within a child's reach.  (*In re Kristin H., supra,* 46 Cal.App.4th at p. 1651.)

New York courts have held that a parent endangers a child by leaving a firearm within reach of a child.  In the *Matter of Tajani B.* (N.Y. App. Div. 2008) 49 A.D.3d 876, the mother appealed from the trial court's finding she neglected her children.  The appellate court affirmed, finding "the evidence . . . was sufficient to prove that the mother left a loaded gun on a bed accessible to her then three-year-old son and next to her then five-month-old daughter who was in a crib, thereby creating an imminent danger that their physical, mental, and emotional health would be harmed.  [Citation.]"  (*Ibid.*; see also *Matter of Ninoshka M.* (N.Y. App. Div. 2015) 125 A.D.3d 567 [parental

11

neglect supported by evidence parent "was storing illegal guns in the home where the children . . . had access to them."]; *Matter of Kevin N.* (N.Y. App. Div. 2014) 113 A.D.3d 524 [finding of parental neglect supported by evidence the father kept "a loaded semi-automatic gun . . . in a plastic bin near where the child slept"]; *Matter of Leah M.* (N.Y. App. Div. 2011) 81 A.D.3d 434 [finding of parental neglect supported by evidence that "gun and ammunition [ ] were within reach of the children" in the family home].)

Other jurisdictions have reached the same conclusion. (See *In re K.T.* (Ohio Ct. App., Aug. 31, 2015, No. 2014–L–134) 2015 WL 5096005, *4 [finding dependent children at risk where they had "access to guns"]; *In re De. S.* (D.C. 2006) 894 A.2d 448, 452 [finding of parental neglect supported by evidence "there was a weapon and ammunition, unsecured" in the child's home]; *Richmond v. Department of Health and Rehabilitative Services* (Fla. Dist. Ct. App. 1995) 658 So.2d 176, 177 [affirming an adjudication of dependency where mother "le[ft] a loaded handgun near [the child]" thereby "endanger[ing]" the child].)

We reject father's argument that the gun did not present a risk of harm to the children because (1) it was in a bag and would therefore not arouse the children's curiosity, and (2) the children were too small to reach the gun. Concealing an item in a bag would not deter a normal four-year-old from seeking to find out the contents of that bag. In addition, the average four-year-old can reach a shelf that is only four feet from the floor, and is capable of scooting a chair over and climbing up on it to reach items placed up high.

Nor are we persuaded by father's argument that the children were not at future risk from guns because law

enforcement had removed his handgun from the home. Firearms are " ' "tools of the trade" ' " in the " 'narcotics business,' " and, as stated above, the evidence supported the trial court's finding that father's drug trafficking activity was likely to reoccur. (*People v. Glaser* (1995) 11 Cal.4th 354, 367; see also *People v. Bland* (1995) 10 Cal.4th 991, 1005 ["Drug dealers are known to keep guns to protect not only themselves, but also their drugs and drug proceeds; ready access to a gun is often crucial to a drug dealer's commercial success"].) In addition, father's lack of insight into the danger posed by the loaded gun in the home provided support for the potential of future risk. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

On this record, the evidence was sufficient to support dependency jurisdiction based on such conduct.

C.      *Disposition*

Father contends the juvenile court "erred when it made a removal order from [father] while allowing the non-offending mother . . . to retain custody of the three children with a plan that demonstrates she is able to protect." The gist of his argument is that when both parents are custodial when the petition is initiated, removal from the offending parent and placement with the non-offending parent violates section 361, subdivision (c)(1) because removal is not necessary to protect the child; under the statute, placement with the non-offending custodial parent is a reasonable *alternative* to removal. The identical argument was recently rejected in *In re Michael S.* (2016) 3 Cal.App.5th 977 (*Michael S.*). We find the reasoning of that case persuasive and adopt it here.

13

In all cases in which a child has been adjudged a dependent child within the meaning of section 300, the juvenile court "may limit the control to be exercised over the dependent child by any parent" but only to the extent necessary to protect the child. (§ 361, subd. (a)(1).) "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence" that there "is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. . . . The court shall consider, as a reasonable means to protect the minor, each of the following: [¶] (A) The option of removing an offending parent or guardian from the home. [¶] (B) Allowing a non-offending parent . . . to retain physical custody as long as that parent . . . presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (§ 361, subd. (c)(1).)

In *Michael S.*, our colleagues in Division One explained that "[s]ection 361, subdivision (c)(1)(A) clearly requires the court to consider the 'option' of removing an offending parent from the home as a possible alternative to removal of the child from the parent. However, that subdivision does not state that the option of removing a parent from the home will necessarily be sufficient to protect the child in all cases even if ordered. It does not, by its terms, preclude the possibility of ordering both removal of the parent from the home and removal of the child from the parent." (*Michael S.*, *supra*, 3 Cal.App.5th at p. 984.) "By its language,

14

section 361 appears to contemplate removal from one parent only. While that section is somewhat inconsistent in its use of the singular and plural, it does refer in places to the possibility of removal from only one parent." (*Ibid.*) "[I]f only one parent engages in the conduct underlying a dependency petition, the juvenile court might conclude that it is appropriate to remove the child only from the offending parent and allow the child to remain in the other parent's custody." (*Id.* at p. 985.)

Under *Michael S.*, the juvenile court in this case could reasonably conclude that it was appropriate to remove Yolanda and Javier only from father and allow them to remain with mother. There was substantial evidence that mother was unaware of father's negligent conduct until September 29th, and once made aware of it, was committed to doing what was necessary to protect the children from such conduct in the future.

Father's reliance on *In re Damonte A.* (1997) 57 Cal.App.4th 894, *In re Andres G.* (1998) 64 Cal.App.4th 476 and *In re N.S.* (2002) 97 Cal.App.4th 167, for a contrary result is misplaced. As the *Michael S.* court explained, those cases "do not hold that a child may never be removed from only one custodial parent. Rather, those cases held that the statutory scheme does not permit removing a child from a parent and then immediately returning that child to the *same* parent." (*Id.* at p. 986, italics added.) *Damonte A., Andres G.* and *N.S.* are inapposite because in this case, Yolanda and Javier were never removed from mother and were not returned to father.

## DISPOSITION

The jurisdiction and disposition orders are affirmed.


                              RUBIN, J.

WE CONCUR:



BIGELOW, P. J.



FLIER, J.