Filed 4/19/21  In re Anthony V. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Anthony V. et. al., Persons Coming Under the Juvenile Court Law. | B306356 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ANTHONY V. et. al.,<br><br>     Minors and Appellants | Los Angeles County Super. Ct. No. 20CCJP01552 |

APPEAL from orders of the Superior Court of Los Angeles County, Kim Nguyen, Judge. Reversed.

Karen J. Dodd, under appointment by the Court of Appeal, for Appellants.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

The juvenile court exercised jurisdiction over Anthony V., M.V., and B.V. (collectively, "the V. minors") under Welfare and Institutions Code section 300, subdivisions (a), (b), and (j).[1] The court found the V. minors were at risk of serious physical harm due to their mother's ex-boyfriend's: (1) violent conduct toward their mother; (2) physical abuse of their younger half-sister; and (3) alcohol and methamphetamine abuse.

On appeal, the V. minors contend the jurisdictional findings, and therefore the dispositional orders, pertaining to them should be reversed because: (1) the court improperly relied on allegations of physical abuse pertaining only to their two younger half-siblings to declare them dependents of the court; and (2) the record does not reflect that at the time of the adjudication hearing, they were at substantial risk of serious physical harm due to any inappropriate future conduct on the part of their mother's ex-boyfriend. We agree and reverse.

# BACKGROUND

E.D. (mother) has a total of eight children. Five of her older children, J.V., Alexis V., Anthony V., M.V., and B.V., are from her prior relationship with Alejandro V. At the time this case was initiated in January 2020, J.V. was an adult. Alexis was 17 years old, Anthony was 16 years old, M.V. was 14 years old, and B.V.

---

1      All undesignated statutory references are to the Welfare and Institutions Code.

2

was 12 years old. Mother had not had contact with Alejandro in 11 years.[2]

M.D. is the father of mother's two youngest children, A.D. and K.D. (collectively, "the D. minors"). At the time this case was initiated, A.D. was four years old and K.D. was three years old. They lived with mother along with their five older half-siblings in a two-bedroom apartment in Pomona. Up until December 2019, M.D. also resided with the family in the same household. He and mother had been in a relationship for the last five years.

This case arose out of an incident that took place on December 1, 2019. That evening, mother and M.D. were lying on their bed with K.D., when K.D. kicked M.D. in a playful manner. M.D. became upset and hit K.D. with an open hand on the left thigh, leaving a red mark. K.D. began to cry. At that point, J.V. came into the bedroom and took her away.

Mother became angry with M.D. for mistreating K.D. and told him not to hit her. In response, M.D. head-butted mother on the left side of her forehead. She countered by scratching him on the face. M.D. then pushed mother to the ground and kicked her on the upper part of her legs four times, causing her to sustain bruises. The altercation ended when one of the older children entered the bedroom and told them to calm down.

M.D. left the home on December 3, 2019. He did not return until approximately two weeks later, when he came to pick up his truck. At that point, mother told M.D. not to return.

Subsequently, mother went to the Department of Public Social Services to seek additional resources. There, she reported

---

2    Mother has another adult daughter, G.N. The record does not indicate who G.N.'s father is, or where she resided throughout the underlying dependency proceedings.

3

the December 1 incident to a social worker, who encouraged her to file a police report. Consequently, on January 7, 2020, mother reported the incident to the Pomona Police Department. Her police report prompted a referral to the Department of Children and Family Services (Department), which was received the next day.

During the Department's initial investigation, mother disclosed two other incidents where M.D. exhibited violent behavior in the household. The first took place in October 2019, when she and M.D. got into an argument in their bedroom. Alexis intervened and tried to defend her, at which point M.D. grabbed him by the neck. They got into a fight, and mother had to separate them. The second incident occurred in November 2019, when M.D. forced mother to have sexual intercourse with him against her will, causing her injury requiring medical attention.

Mother also reported that Alexis, who used to work with M.D., told her he saw M.D. using crystal methamphetamine at work. Although mother stated she had not seen M.D. with any drug paraphernalia at home, she noticed he was more irritable and was not sleeping as much.

On March 20, 2020, the Department filed a petition on behalf of all six of mother's minor children under section 300, subdivisions (a), (b)(1), and (j). The petition alleged the children were at substantial risk of serious physical harm due to: (1) M.D.'s violent conduct toward mother and her failure to protect from his conduct (counts a-1 and b-1); and (2) M.D.'s methamphetamine abuse and mother's failure to protect from his substance abuse (count b-3). The petition further alleged the D. minors were at serious risk of physical harm due to M.D.'s physical abuse of K.D. during the December 1 incident (counts a-

2, b-2, and j-1). On this particular point, however, the petition's allegations made no mention of Alexis, Anthony, M.V., or B.V.

Throughout the five-month period leading up to the adjudication hearing held on May 7, 2020, mother, J.V., Alexis, and the V. minors told the Department they had not seen, spoken to, or otherwise heard from M.D. since he left the home in December 2019. Mother reported she was unaware of M.D.'s whereabouts, and that the phone number she previously used to contact him had been disconnected. The Department made several efforts to obtain contact information for M.D. and Alejandro to notify them of the dependency proceedings. Its attempts ultimately were unsuccessful.

At the adjudication hearing, the Department informed the court that it arrived at an agreement with mother to amend the petition by striking the allegations pertaining to her, thereby rendering her a non-offending parent. Subsequently, the juvenile court dismissed Alexis from the petition at his request, as he would be turning 18 years old in the next week. With respect to the V. minors and the D. minors, the court sustained all the counts as amended,[3] and declared them dependents of the court under section 300, subdivisions (a), (b), and (j).

Proceeding to disposition, the juvenile court removed the children from their respective fathers and placed them with mother under Department supervision. Mother's case plan pertaining to the V. minors required her to participate in individual counseling and a support group for domestic violence

---

3      In addition to dismissing Alexis from the petition, the juvenile court amended count b-3 to "conform to proof" and state the children were at risk of harm due to M.D.'s alcohol abuse in addition to his abuse of methamphetamine.

victims. The V. minors were ordered to attend individual counseling and conjoint family counseling.

The V. minors timely appealed.

## DISCUSSION

### I.  Applicable Law and Standard of Review

Under section 300, subdivision (a), the juvenile court may exercise jurisdiction over a child if it finds "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." Pursuant to section 300, subdivision (b)(1), the juvenile court may exercise jurisdiction over a child if it finds "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child[.]" Lastly, per section 300, subdivision (j), the court may exercise jurisdiction over a child upon finding "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

"'The basic question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm.' [Citation.]" (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022, italics added.) "While past harmful conduct is relevant to the current risk of future physical harm to a child [citations], the evidence as a whole must be considered. '[P]revious acts of neglect, standing alone, do not establish a

6

substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur. [Citations.]' [Citations.]" (*Id.* at p. 1025.)

We review a juvenile court's jurisdictional orders for substantial evidence. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.) Under this standard, "we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders." (*Ibid.*) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. [Citation.]" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

"Substantial evidence must be of ponderable legal significance. It is not synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value. [Citation.]" (*In re Dakota H.*, *supra*, 132 Cal.App.4th at p. 228.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order. [Citations.]" (*Ibid.*) "' . . . "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]' [Citation.]" (*In re Yolanda L., supra*, 7 Cal.App.5th at p. 992.)

## II.   Analysis

The V. minors contend the juvenile court's jurisdictional findings should be reversed. They advance two arguments in support of this position. We address each in turn.

First, the V. minors contend the court erred by exercising jurisdiction over them based on counts a-2, b-2, and j-1, which

7

pertained to M.D.'s physical abuse of K.D. They argue jurisdiction was improper based on those counts because the allegations in support thereof only pertained to the D. minors, and did not mention the V. minors. We agree.

As the V. minors correctly observe, the Department did not allege they were at risk of harm due to M.D.'s physical abuse of K.D. The amended petition's only allegations on this point were pled in counts a-2, b-2, and j-1, which were identical and read as follows: "On 12/1/19, the children [A.D.] and [K.D.]'s father, [M.D.], physically abused the child [K.D.] The father struck the child [K.D.]'s left thigh with the father's hand resulting in the child sustaining a red mark to the child's thigh. Such physical abuse of the children by the father caused the child unreasonable pain and suffering. The physical abuse of the child by the father endangers *the child's* physical health and safety and places *the child and the child's sibling [A.D.]* at serious risk of physical harm." (Italics added.)

At the adjudication hearing, however, the juvenile court found *all* of mother's minor children, including the V. minors, were at risk of harm due to M.D.'s physical abuse of K.D. Specifically, in sustaining counts a-2, b-2, and j-1, the court stated: "[K.D.] is a very, very, very young child, and clearly [M.D.] has physically abused her and there was a red mark. I think that was serious abuse, given her very young age, and I think given all of the obvious . . . violent acts done by [M.D.], there is an ongoing risk of harm. *I think the siblings remain at [risk of] harm as well*, and so the Court will sustain [those counts]."[4] (Italics

---

4    The Department states it "reads the case differently" and asserts the juvenile court made jurisdictional findings pertaining solely to the D. minors when it sustained counts a-2, b-2, and j-1.

8

added.) In so doing, the juvenile court erred by making jurisdictional findings pertaining to the V. minors based on allegations not found in the petition. (See *In re Andrew S.* (2016) 2 Cal.App.5th 536, 544 [reversing jurisdictional finding based on the father's failure to protect his children from the mother's physical abuse because "the Department never made any such allegation," and therefore the father "had no notice or opportunity to defend against it. [Citation.]"].)

Next, the V. minors argue that the other jurisdictional findings pertaining to them are not supported by substantial evidence. Specifically, they contend the record does not establish that at the time of the adjudication hearing, they were at risk of serious physical harm due to M.D.'s violent conduct toward mother or substance abuse. For the reasons discussed below, we again agree with the V. minors' argument.

First, the evidence demonstrates mother is not going to continue her relationship with M.D. Mother reported the relationship is over, and that she has no plans to reunify with him. She acknowledged M.D. was overly controlling, as he did not allow her to work, go shopping alone, or get dressed up. She

In the Department's view, the record indicates "the court misspoke, or the reporter misheard when stating 'siblings' in [the findings on] the physical abuse counts." We conclude the V. minors' construction of the record is accurate. The minute orders from the adjudication hearing state the V. minors were declared dependents of the court under section 300, subdivisions (a), (b), and (j). The amended petition's only allegations under subdivision (j), however, related to M.D.'s physical abuse of K.D. Accordingly, the record suggests the juvenile court did, in fact, rely on those allegations in exercising jurisdiction over the V. minors.

9

related she "feels relieved now that [M.D.] is gone." Since ending the relationship, mother has been able to secure a job, and reported that, overall, she "'feel[s] so much better[.]'"

Second, the record reflects M.D. is not going to reside with mother and the V. minors in the future. As noted above, in the five-month period following his departure from the home in mid-December 2019, M.D. has not returned. Since then, M.D. has not seen or had any contact with mother or any of her children. His whereabouts were unknown at the time of the adjudication hearing, and mother reported she did not have updated contact information for him. Mother also related she would not allow M.D. to return to the household, that she has told all of her children they cannot see their fathers, and that she planned to move to a new home. In light of this evidence, we reject the Department's contention that M.D. will likely "find his way back into [the family's] lives" because he and mother have two young children together. The Department's assertion lacks evidentiary support, and is nothing more than "pure speculation" about M.D.'s future conduct, which cannot support a finding of dependency. (See *In re Steve W.* (1990) 217 Cal.App.3d 10, 22-23.)

Lastly, the evidence shows mother has been cooperative with the Department and expressed willingness to participate in services, including domestic violence classes, mental health services, and therapy. Following the December 1 incident, she initially reached out to the Department of Public Social Services for assistance, and agreed to file a police report per the social worker's recommendation. When the Department got involved, mother agreed to a safety plan. She has been forthright when speaking with the Department, the police, and representatives from other agencies. Mother has also expressed willingness to

10

participate in a Child and Family Team Meeting, and agreed to schedule the meeting when it is appropriate to hold it in-person, given the safety concerns presented by the COVID-19 pandemic.

In summary, the evidence fails to establish that at the time of the adjudication hearing, the V. minors were at substantial risk of serious physical harm due to any inappropriate conduct by M.D. (See *In re J.N.*, *supra*, 181 Cal.App.4th at pp. 1022, 1025.) Accordingly, we reverse the court's jurisdictional findings pertaining to them. Those findings therefore cannot support the dispositional orders concerning the V. minors. (See *In re Andrew S.*, *supra*, 2 Cal.App.5th at pp. 544, 548.) Consequently, we reverse those orders as well.

## DISPOSITION

The jurisdictional findings and dispositional orders pertaining to Anthony V., M.V., and B.V. are reversed.


CURREY, J.


We concur:


MANELLA, P.J.


COLLINS, J.

12