Filed 1/27/22  In re Jayden D. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JAYDEN D., a Person Coming Under the Juvenile Court Law. | B312338 (Los Angeles County Super. Ct. No. 21CCJP01335A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JOY B.,<br><br>        Defendant and Appellant. | |

APPEAL from an order the Superior Court of Los Angeles County, Brett Bianco, Judge. Affirmed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Joy B. (mother) challenges the juvenile court's assertion of dependency jurisdiction over her now three-year-old son, Jayden D. Because the court's assertion of jurisdiction was supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Jayden was born in October 2018 to mother and Brandon D. (father).

Father has been incarcerated since Jayden was born. Most recently, father was charged with murder and with manufacturing a weapon while in custody. Father denies the murder charge, but admits that he made a makeshift knife.

In 2020, mother started dating and, along with Jayden, started living with another man, H.H. H.H. was on felony probation in September 2017.

In March 2021, a judge issued arrest warrants for mother and H.H., and a search warrant for mother's house. In issuing these warrants, the judge found probable cause to believe that mother drove H.H. and three other members of the 62 Harvard

2

Park Brims street gang to a liquor store, where H.H. got out and fired his weapon.  Mother subsequently admitted that she was present at the location of the shooting, that she was seated in the driver's seat, that other people were in the car with her, and that shots were fired; however, mother denied that she had been driving, that she knew her year-long boyfriend was a gang member, or that she had any idea anyone would be there to engage in violence.  H.H. was charged with attempted murder; mother, with being an accessory to murder.

However, mother reported that she had dropped off Jayden with a relative and he was not present at the liquor store.

## II.    Procedural Background

On March 22, 2021, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Jayden on the grounds that (1) mother's conduct in "allow[ing]" H.H., "who has a history of violence," to "reside" with and have "unlimited access" to Jayden, and in being "involved in a gang related attempted murder drive by shooting" created a "detrimental and endangering home environment" that "endangers" Jayden's "physical health and safety, and places [him] at risk of serious physical harm[] and damage," and (2) father's "criminal history," including the most recent pending murder charge, "endangers" Jayden's "physical health and safety and places [him] at risk of physical harm, damage and danger." The Department alleged that jurisdiction was appropriate under Welfare and Institutions Code section 300, subdivision (b).[1]

---

1      All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

The court held a combined jurisdictional and dispositional hearing on May 5, 2021. At the hearing, counsel for Jayden urged the court to assert jurisdiction due to mother's conduct because "the ongoing gang retaliation" that the February 2021 incident invited "put[]" Jayden "at more risk." The court sustained jurisdiction on both alleged grounds. Specifically, the court ruled that "the mere fact that [mother and father] are incarcerated is not by itself grounds for the court to take jurisdiction," but went on to find that "the lifestyle and activities that mother and father are both engaging in do definitely put this child at substantial risk of harm." The court also removed Jayden from both parents, and ordered reunification services for mother.

Mother filed this timely appeal.

## DISCUSSION

Mother argues that the juvenile court erred in asserting dependency jurisdiction over Jayden because neither sustained allegation from the Department's petition is supported by sufficient evidence.[2] We review a juvenile court's finding of dependency jurisdiction for substantial evidence, asking whether the record—when viewed as a whole and drawing all inferences in support of the court's finding—contains """sufficient facts to

---

[2] Mother also purports to challenge the juvenile court's removal of Jayden from her custody, but her argument is that removal is inappropriate because there was no jurisdiction. Thus, mother has waived the removal issue except to the extent it overlaps with her jurisdictional challenge. (Cf. *In re A.C.* (2017) 13 Cal.App.5th 661, 672 ["'When an appellant . . . asserts [an argument] but fails to support it with reasoned argument and citations to authority, we treat the point as waived.'"].)

support [that] finding[].""" (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

As pertinent here, a juvenile court is empowered to assert dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child." (§ 300, subd. (b).) *Risk* of harm means just that: The juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction." (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383 (*Kadence P.*); *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) When it comes to assessing that risk, the juvenile court may look to a parent's past behavior as a "good predictor" of whether the child is currently at risk. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133; *Kadence P.*, at pp. 1383-1384.)

Substantial evidence supports the juvenile court's finding that mother had placed Jayden at substantial risk of serious physical harm by allowing H.H. unlimited access to Jayden and by engaging in gang-related criminal activity with H.H. It is undisputed that H.H. had suffered at least one felony conviction, was placed on probation, and violated his probation before mother started dating him. Mother thereafter let H.H. move in with her and Jayden. Then, in February 2021, mother drove H.H. and other gang members to a liquor store, where H.H. got out and started shooting. Tellingly, mother does not dispute that H.H. is a gang member or that H.H. engaged in a gang-related shooting; she merely insists that she *did not know* about his gang affiliations or his murderous intent ahead of time. Based on the evidence that mother allowed Jayden to live with her companion who has a criminal history and actively engages in gang violence,

the juvenile court could reasonably infer a risk of gang-related retaliation for the February 2021 shooting that would place Jayden at risk. (See *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424 [substantial evidence may rest on reasonable inferences].) The risk to Jayden is the same whether mother knew about H.H.'s gang affiliation in advance, was negligent in failing to learn of it in the year they cohabitated before the crime, or is in denial about those affiliations.

Mother responds with six arguments.

First, she argues that the sole evidence of her involvement in the February 2021 shooting was the unsupported opinion of a single police officer. She is wrong. The record also discloses that a judge found sufficient evidence of mother's and H.H.'s involvement in the shooting to issue arrest warrants and a search warrant. Coupled with mother's selectively exculpatory admission to being behind the wheel of the car at the liquor store at the time shots were fired, the warrant and mother's admission constitute sufficient evidence for the juvenile court to conclude that the entire affair was not merely the product of a single police officer's active imagination. (*I.J.*, *supra*, 56 Cal.4th at p. 773.) Mother points to her insistence that she is wholly innocent, but we must construe the record in the light most favorable to the juvenile court's ruling, and that ruling could only be reached if the court found mother's protestations of innocence not to be credible. It is not our job to reweigh the evidence or the juvenile court's credibility findings. Along similar lines, the fact that mother is only *charged* with being involved is irrelevant: The pertinent standard of proof is a preponderance of the evidence (*ibid.*), so the absence of a finding of guilt beyond a reasonable doubt does not matter (*In re Coley* (2012) 55 Cal.4th 524, 557).

6

Second, mother argues that there is insufficient evidence of H.H.'s criminal history and violence. The critical time to assess risk is the time of the jurisdictional hearing. (*In re M.M.* (2015) 240 Cal.App.4th 703, 719.) By that time, the juvenile court knew of H.H.'s prior conviction and violation of probation and, critically, had sufficient evidence of his status as a gang member and the person who opened fire at the liquor store.

Third, mother argues that any risk to Jayden was ameliorated by the time of the jurisdictional hearing because he was safely in the maternal grandmother's custody, and maternal grandmother was open to having him stay with her as long as necessary. However, at the time of the hearing, mother was maintaining her innocence and had yet to be convicted. If the charges are dropped, a jury acquits her, or she is convicted but sentenced to a noncustodial sentence, there is every reason to believe mother would resume living with H.H. (were he also to be acquitted) and Jayden, thereby placing the child at risk. (Accord, *In re Carlos T.* (2009) 174 Cal.App.4th 795, 806.)

Fourth, mother argues that even if the allegations regarding the shooting were true, there was no risk of harm to Jayden because he was not present at the shooting. Mother misses the point here. The fact that mother lined up childcare before driving her boyfriend to engage in a gang-related shooting in no way vitiates the risk to Jayden arising from potential retaliation. What is more, this argument suggests that such behavior poses no risk to Jayden as long as he is not present when the crime(s) go down. Mother's inability or unwillingness to acknowledge how her actions create a substantial risk of harm to Jayden further supports the juvenile court's finding of risk. (See *In re J.N.* (2010) 181 Cal.App.4th 1010, 1025-1026 ["In

evaluating risk . . . , a juvenile court should consider . . . , among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child"].)

Fifth, mother argues that jurisdiction may not be premised on a parent's incarceration alone. This is true (e.g., *In re Noe F.* (2013) 213 Cal.App.4th 358, 366), but irrelevant because the juvenile court was careful to explain that it was *not* exerting jurisdiction over Jayden due to his parents' incarceration but rather because their underlying behavior was placing Jayden at substantial risk of serious physical harm.

Lastly, mother argues that there was insufficient evidence to support the jurisdictional finding regarding father. Because the evidence supporting the finding regarding mother is valid, and because we need only find one basis for jurisdiction (*In re A.F.* (2016) 3 Cal.App.5th 283, 289), we have no occasion to address mother's arguments in this regard.

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST