Filed 2/2/24  In re I.A. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re I.A. et al., Persons Coming Under the Juvenile Court Law. | B325800 (Los Angeles County Super. Ct. No. 22CCJP04260A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> V.A., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Temporary Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Tracey Dodds, Principal Deputy County Counsel for Plaintiff and Respondent.

Father appeals from the juvenile court's jurisdiction and disposition orders under Welfare and Institutions Code sections 300, subdivisions (b) and (j), and 361, subdivision (c).[1] Respondent Los Angeles County Department of Children and Family Services (Department) contends that the orders are supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

As relevant here, mother[2] and father have three children: two daughters, I.A. (born June 2010) and M.A. (born March 2012), and a son, A.A. (born July 2016). Mother and father were married for 14 years, separating in November 2021. Mother filed for divorce in August 2022. Our record does not clarify whether there was an operative custody order in the family law case. Following the parents' separation, on certain days father would pick up all three children from school, take them to his home, give them lunch, and do homework with them. If the girls did not want to stay with father, he would take them to mother's house, while the son spent most nights with father.

Between July and October 2022, mother called the police on three different occasions. In the first two incidents, occurring in July and August 2022, father was picking up the children, and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother is not a party to this appeal.

I.A. did not want to go with father.[3]  I.A. reported that father was verbally abusive, and had pulled her hair, grabbed her arm, and pushed her chest.  Father pushed I.A. while attempting to take her cell phone away.  Father denied touching I.A.  In July, father left without I.A., taking the two younger children before police arrived.  In August, father got into a verbal argument with maternal grandfather, and physically touched I.A., either grabbing her by the arm, leaving a red mark, or pulling her hair and pushing her in the chest.  The following day, mother went to the local police station to report father's aggressive behavior, claiming he is an alcoholic with gambling issues and debt.  Mother played a recording of father's argument with maternal grandfather, and showed a photo of I.A.'s arm, with light redness on it, claiming it was bruising from father grabbing I.A.'s arm the day before.  Both incidents resulted in referrals to the Department, but they were closed as inconclusive.

On October 26, 2022, police responded to a call by mother that I.A. was hiding in the bathroom of a pizza restaurant because father had struck her.  Police found I.A. and M.A. in the restaurant restroom, crying and begging for help.  I.A. had a bruise on her forearm and said father caused the injury when he hit her.  During a police interview at the restaurant, I.A. described a separate incident that occurred two days earlier, on October 24, 2022.  After school, I.A. did not want to go to father's home, and asked father to take them directly to mother's house.

---

[3] We describe the July and August incidents together, because the Department reports and testimony at the adjudication hearing do not always clarify when certain actions occurred.  For purposes of our discussion, the exact timing is less important than the actions reported.

Father refused, saying the family would go to his parents' house for dinner and do homework. I.A. repeatedly asked to be taken to mother's home, and refused to eat dinner at father's house. An argument ensued, and father took away I.A.'s cell phone. After dinner, father drove the girls to mother's house, but continued yelling at I.A. While driving, he reached into the back of the car and slapped her on her thigh twice. He also grabbed her backpack from the back passenger floor, swinging it and striking her in the arm with the backpack twice, leaving a bruise on her arm. Mother photographed the bruise when the girls arrived at her home. M.A. made a voice recording of father immediately after the backpack incident, in which father was yelling obscenities in English and Armenian, yelling that no one in the car should move or even breathe.

On October 26, 2022, I.A. again wanted father to take her directly to mother's home, but father became enraged and said they were going to the pizza restaurant for dinner. When I.A. continued asking to be taken home, he pulled the car over, was yelling at her and slapped her on the left leg and left forearm in the restaurant, the girls went to the restroom together, and called mother from M.A.'s cell phone, and mother called the police. When police arrived, they found both girls in the restroom. The girls told officers father was an alcoholic and was becoming more abusive each day; they were terrified of him and did not feel safe with him. Father refused to take a sobriety test or allow the officers to look into his eyes. He was arrested for misdemeanor child abuse (Pen. Code, § 273a, subd. (b)) and was served with an emergency protective order (EPO) regarding all three children. The EPO provided it would expire on November 2, 2022. Father posted bail. When his attorney

4

ultimately appeared in court, father learned the charges had been dismissed and no protective orders were in place.

*Department Investigation and Petition*

I.A. reported to the social worker that she used M.A.'s phone in the restaurant restroom to call mother because she was afraid of father, who was yelling at her and hits her often. Both girls said they were afraid of father because he was too aggressive with them, they do not feel safe with him driving, and they believe he is an alcoholic. Mother reported father has been drinking for six to eight years, but his alcoholism has been worse since their separation about a year ago. They had a family law hearing scheduled for November 2, 2022.

Father denied hitting any of his children or anyone else, and denied cursing or using damaging words while speaking with the children. He stated he would yell if they were being disrespectful.

On October 28, 2022, the Department filed a dependency petition, alleging counts under section 300, subdivisions (a), (b) and (j), based on father's physical abuse of I.A. (counts a-1, b-1, and j-1) and Milana (counts a-2, b-2, and j-2), and father's alcohol abuse (count b-3). At the initial hearing on November 14, 2022, the court denied mother's request for a temporary restraining order, and ordered the children to be released to mother, with father having monitored visits. The court further provided that father could attend the girls' sporting events with a monitor, but that he would step down from coaching the teams. Both parents were ordered not to discuss the case with the children or speak negatively about the other parent to the children.

*Jurisdiction and Disposition Hearing*

The jurisdiction and disposition hearing took place over two days in December 2022, and the court heard testimony from I.A., M.A., and father. After argument and a short break, the court announced it would sustain an amended b-1 count and dismiss all remaining counts of the dependency petition. As amended, the count read: "On prior occasions, . . . [father] used inappropriate physical means to remove [IA.'s] phone from her grasp and pushed [M.A.] and engaged in aggressive tactics to make them comply with the father's wishes. Such inappropriate physical actions and aggressions made [I.A.] and [M.A.] fear their father and caused them some pain and endangers their physical health and safety and places them and their sibling [A.A.] at risk of physical harm." The court ordered the Department to arrange child and family team meetings for paternal and maternal family members, so all family members would be aware of the order to refrain from making negative comments about either parent. The court ordered monitored visits for father, recognizing that the girls may not be ready to visit with him, and so they could decline or have the visit end early if they wished. The court ordered the children removed from father's custody under section 361, subdivision (c), placing them with mother.

## DISCUSSION

Father contends there is insufficient evidence to support the court's exercise of jurisdiction under section 300, subdivisions (b) and (j). He argues that there was insufficient evidence of

serious physical harm.  He also argues that even if we were to find sufficient evidence that he physically disciplined the children, his actions fell within his right to reasonably discipline his children, and his actions did not establish that the children were at substantial risk of serious physical harm at the time of the jurisdictional hearing.  Finally, father challenges the sufficiency of the evidence supporting the court's removal order.  Father has not demonstrated that there was insufficient evidence to support the court's orders.

*Jurisdiction: Relevant Law and Standard of Review*

Pursuant to section 300, subdivision (b)(1), the juvenile court may exercise jurisdiction over a child if it finds "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] [t]he failure or inability of [his or her] parent or guardian to adequately supervise or protect the child[.]"  Under section 300, subdivision (j), the court may exercise jurisdiction over a child upon finding "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

If parents' actions fall within the scope of their right to reasonably discipline their children, those actions may not serve as the basis of dependency jurisdiction under section 300.  (*In re D.M.* (2015) 242 Cal.App.4th 634, 640 [acknowledging "exception to dependency jurisdiction for reasonable discipline," which "applies across the board to all of section 300's jurisdictional grounds"].)  For this " 'parental disciplinary privilege' " to apply,

7

however, three elements must be satisfied: (1) the parent acted with " 'a genuine disciplinary motive;' " (2) the discipline was necessary (i.e., warranted by the circumstances); and (3) the amount of punishment was reasonable and not excessive. (*In re D.M., supra*, at p. 641; *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 91 ["a successful assertion of the parental disciplinary privilege requires three elements: (1) a genuine disciplinary motive; (2) a reasonable occasion for discipline; and (3) a disciplinary measure reasonable in kind and degree"]

We review a juvenile court's jurisdictional orders for substantial evidence. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992 (*Yolanda L.*).) Under this standard, "we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders." (*Ibid*.) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. [Citation.]" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 (*Dakota H.*).)

"Substantial evidence must be of ponderable legal significance. It is not synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value. [Citation.]" (*Dakota H., supra*, 132 Cal.App.4th at p. 228.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order. [Citations.]" (*Ibid*.) " '. . . "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]' [Citation.]" (*Yolanda L., supra*, 7 Cal.App.5th at p. 992.)

*Evidentiary Support for Jurisdictional Findings*

In challenging the evidentiary support for the court's jurisdictional finding, father focuses on the court's determination that he used inappropriate physical means to take I.A.'s phone from her, pushed M.A., and engaged in aggressive tactics that placed the children at risk of harm. He points out inconsistencies in the children's statements, and highlights mother's efforts to limit father's custody and visitation rights through the family law proceeding.

While there may have been inconsistent or conflicting evidence, the evidence is sufficient to support jurisdiction when viewed in the light most favorable to the juvenile court's decision.

The Department's reports and the children's testimony at the adjudication hearing described specific incidents where father pushed I.A. in the chest and pulled her hair after she said she did not want to go with father. Father repeatedly denied hitting his children, but there is ample evidence to the contrary, and we leave questions of credibility to the juvenile court. M.A. testified that father did not used to act so aggressively, but started hitting after parents separated. During his testimony at the adjudication hearing, father admitted that he would yell when the children, particularly I.A., were being disrespectful. He also admitted asking mother for assistance when I.A. was being difficult, noting that mother mocked him, rather than helped him. In light of all of the testimony, and father's continued insistence that he did not hit his children at all, it was reasonable for the court to infer that, absent court intervention, there was sufficient evidence to support a finding that that father's conduct in response to I.A.'s defiant attitude had placed I.A. at risk of

serious physical harm and would escalate, placing all three children at risk of serious physical harm.

Recognizing the state of the record and our general deference to jurisdictional findings supported by substantial evidence, father also argues his actions constituted reasonable parental discipline. We are not convinced by father's argument, because the court could reasonably infer that father's aggressive attitude and physical actions—and the pain and fear they triggered in his daughters—were neither genuinely disciplinary nor warranted by the circumstances.

In *D.M.*, the juvenile court exercised jurisdiction over the children based in part on its finding that, by spanking them with a sandal, mother engaged in inappropriate discipline amounting to physical abuse. (*In re D.M., supra*, 242 Cal.App.4th at p. 638.) The *D.M.* court reversed the jurisdictional finding pertaining to the mother's physical abuse, reasoning the juvenile court improperly relied on a "blanket rule" that "treats the implement of punishment (a sandal rather than a hand) as dispositive," and therefore applied the wrong legal standard by failing to "consider the genuineness, necessity, or reasonableness of mother's use of spanking as a disciplinary measure[.]" (*Id*. at pp. 642–643.) The *D.M.* court remanded the case so the juvenile court could apply the three-part test described above to ascertain whether the mother's actions fell within the parental disciplinary privilege. (*Id*. at p. 643.)

Here, in contrast to the parent in *D.M.*, father denied hitting his children, and testified that he disciplined I.A. by taking away things she liked, such as her cell phone or basketball games. Father acknowledged only that he would yell at I.A. if she spoke disrespectfully, and the court acknowledged that

handling disrespect from a pre-teen poses a parental challenge. However, nothing in the court's statements or the sustained jurisdictional finding supports that the court viewed father's physical acts as having a genuine disciplinary motive. To the contrary, there is ample evidence to support the court's determination that father's actions stemmed not from an intention to discipline the older sister, but rather from anger and frustration.

On this record, the juvenile court could reasonably conclude father's actions, considered in the context of a heated custody battle and a defiant oldest daughter intent on spending as little time with father as possible, were not genuinely disciplinary. Because successful assertion of the parental disciplinary privilege requires satisfaction of all three elements of the applicable test (*Gonzalez*, *supra*, 223 Cal.App.4th at p. 91), the court did not err in sustaining the amended allegation. Accordingly, there is substantial evidence to support the court's determination that the children were at substantial risk of suffering serious physical harm absent court involvement.

*Disposition order:  Relevant Law and Standard of Review*

Section 361, subdivision (c)(1) provides for the removal of a dependent child from the physical custody of the parent "with whom the child resides at the time the petition was initiated" if the court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without

11

removing the minor from the minor's parent's . . . physical custody." Subdivision (d) contains similar provisions with respect to removal from a parent with whom the child did not reside. (§ 361, subd. (d) [removal requires finding of substantial danger, as in subd. (c)(1), for the parent to live with the child rather than for the child to return home].) "[B]oth subdivision (c) and subdivision (d) impose the same factfinding requirements and heightened clear and convincing burden of proof for removal." (*In re S.F.* (2023) 91 Cal.App.5th 696, 720 [any error in removal order under section 361, subdivision (c), rather than subdivision (d) was harmless].)

"'On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.' ([*In re*] *Ashly F.* [(2014)] 225 Cal.App.4th [803,] 809; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005 ['when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof'].) ' " ' The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" [Citation.]' [Citation.]" (*In re I.R.* (2021) 61 Cal.App.5th 510, 520–521.)

*Evidentiary Support for Disposition Order*

The Department argues that the factual record here does not support that the children were living with father at the time the dependency petition was filed; accordingly, the Department contends that the removal order at issue could not have been made under section 361, subdivision (c), and that the clear and convincing evidence standard does not apply.  We need not resolve any conflict about the evidence regarding whether the children were living with father, however, because section 361 authorizes the court to remove a child from parental custody regardless of whether the child resides with the parent or not, so long as there is clear and convincing evidence that there would be a substantial danger for the parent to live with the child.  (See section 361, subds. (c) and (d).)

Applying the heightened standard on appeal for review of a finding that a juvenile court must make by clear and convincing evidence, we find that the same substantial evidence outlined above, considering the record as a whole, provides adequate support for the court's removal order.

## DISPOSITION

The jurisdiction and disposition orders are affirmed.
NOT TO BE PUBLISHED.


MOOR, J.

I concur:


RUBIN, P. J.

In re I.A. et al.
B325800


BAKER, J., Dissenting



I respectfully dissent.  The grounds on which the juvenile court took jurisdiction over the children in this case do not satisfy the threshold for jurisdiction under Welfare and Institutions Code section 300.[1]  As I shall briefly explain, the juvenile court's own findings establish this is so.  I accordingly believe the majority errs by speculating about what the juvenile court *could* have concluded or inferred—but did not actually conclude or infer.

The juvenile court dismissed the dependency petition's section 300, subdivision (a) count alleging Father inflicted serious physical harm nonaccidentally on the children (or presented a substantial risk of inflicting such harm).  The juvenile court also specifically found the children's testimony that Father hit I.A. with a backpack while driving was not credible.  But the juvenile court determined it would assert jurisdiction by sustaining its own self-styled allegation that Father "used inappropriate physical means to remove [I.A.'s] phone from her grasp and pushed [M.A.] and engaged in aggressive tactics to make them comply with [F]ather's wishes."

---

[1]     Statutory references that follow are to the Welfare and Institutions Code.

The problem, however, is that the juvenile court never decided whether Father's actions described in the allegations the court crafted to make a risk of serious physical harm finding (even while dismissing the allegation that Father inflicted such harm nonaccidentally) were justified as reasonable parental discipline. (See generally § 300 ["It is the intent of the Legislature that this section not . . . prohibit the use of reasonable methods of parental discipline[ ] or prescribe a particular method of parenting"]; *In re D.M.* 242 Cal.App.4th 634, 640.) And that is not because the court was not alerted to the issue: both the Los Angeles County Department of Children and Family Services and Father argued at the jurisdiction hearing that, given the evidence, the court needed to make a finding about whether Father took the actions he did in service of reasonable parental discipline. The court, however, never did.

In some circumstances, reviewing courts can imply findings that were not made. On this record, there are two reasons why we should not and, indeed, cannot. First, as already discussed, the juvenile court dismissed the section 300, subdivision (a) count and found not credible the only evidence about "aggressive tactics" that might present a substantial risk of serious physical harm and yet be difficult to attribute to reasonable parental discipline (the backpack striking). Second, such an implied finding is directly contrary to an *express* finding the juvenile court did make. When articulating its ruling on the record, the court left no doubt about the real reason why it was assuming jurisdiction: "[I] think that the nastiness and the vile feelings of the parents' separation are dripping onto the children. And that's the primary reason why I'm asserting jurisdiction in this case."

Because we do not defer to lower court findings that were never made, and because the record is clear that the juvenile court asserted jurisdiction for reasons that are insufficient under the only subdivisions of section 300 pled and sustained in the dependency petition, I would reverse.



BAKER, J.