Filed 1/12/22  In re M.C. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re M.C., et al., a Person Coming Under the Juvenile Court Law. | B309591 (Los Angeles County Super. Ct. No. 20CCJP01697A–C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.C.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed in part, dismissed in part.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo Castro Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Jessica S. Mitchell, Deputy County Counsel for Plaintiff and Respondent.

———————————————

M.C. (father) filed this appeal to challenge the juvenile court's order declaring his three children dependents under Welfare and Institutions Code section 300, subdivision (b)(1), and removing them from father's custody under section 361, subdivision (c).[1] Respondent Los Angeles County Department of Children and Family Services (Department) contends the appealed jurisdictional finding and removal order are supported by substantial evidence. We affirm the juvenile court's jurisdictional finding based on domestic violence, and we dismiss the portions of father's appeal challenging the juvenile court's jurisdictional finding based on father's prior conviction for possession of child pornography and the juvenile court's disposition orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Consistent with our standard of review, we state the facts in the light most favorable to the juvenile court's findings, resolving all conflicts and drawing all reasonable inferences to uphold the court's order, if possible. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

*Family Background and Overview*

The family consists of father, L.W. (mother), and their three children M.C. (born February 2014), S.C. (born December 2015), and R.C. (born November 2016). By June 2020, mother and father had known each other for 15 years and had been in a relationship for six years. Father has a lengthy criminal history, including two separate felony convictions. Father's most recent felony conviction occurred in 2012, when he pled guilty to possessing child pornography. Mother was aware of father's status as a registered sex offender but did not believe he had done anything inappropriate to anyone and did not see why father was considered a sex offender. Mother denied

_____

[1] All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

ever seeing any signs of father engaging in concerning behavior with their children or any other children.

*Father's Criminal History, Including His Arrest and Conviction for Possession of Child Pornography*

Father acknowledged having a lengthy criminal record, starting in 2000 at the age of 21. After attending a funeral, he got into an argument with someone, his gun went off, and after being arrested and charged, he went to prison for a year. In 2004, father was convicted for assault and sentenced to four years in prison when he got into an argument with his neighbor while smoking marijuana.

In 2010, shortly after being released from jail for driving under the influence (DUI), father was arrested for possession of child pornography. Father's CLETS report shows a February 2012 felony conviction for violating Penal Code section 311.11(A), possession of obscene materials depicting minors, with a three-year prison sentence and five years of probation. On December 2, 2014, father completed a 52-session cognitive behavioral therapy program in sex offender treatment.

Between 2014 and 2016, father had several convictions for more minor misdemeanor offenses, like driving without a license and violating probation by failing to register as a sex offender. In February 2018, father was convicted of misdemeanor battery against a peace officer. He received a sentence of 22 days in jail and 36 months of probation.

*2019 Domestic Violence Incident*

While mother and father acknowledged past arguments, including some involving physical hitting, they both denied any domestic violence requiring police involvement prior to an incident in February 2019. Describing the February 2019 domestic violence incident to the social worker, mother said father "'was being a certain way. He kept coming at me. He pulled off my sweatshirt.'" Law enforcement was called, and father was arrested. Father claimed mother overreacted and exaggerated the incident.

According to father, he and mother were arguing while he was in the kitchen chopping food, and she was in the living room. He walked to the living room while still holding a knife, and she started yelling "he's going to kill me!" The police were called, and when they arrived, father was holding R.C. Father claimed that despite being afraid for his own life, when the police asked him to put R.C. down, he complied, and the police tased him and shot him several times with rubber bullets before arresting him.

Father was charged with four counts: (1) inflicting corporal injury on a spouse (Pen. Code, § 273.5(a)); (2) assault with a deadly weapon not a firearm (Pen. Code, § 243(c)); (3) obstructing or resisting an officer (Pen. Code, § 69); and (4) child cruelty (Pen. Code, § 273(a)). The criminal court issued a protective order protecting both mother and R.C., presumably because father was holding R.C. when law enforcement arrived. Father remained in jail until paternal grandmother bailed him out ten months later, and the criminal case against him remained open at the time of the jurisdictional hearing.

*Father's Drug Use History*

Father acknowledged using drugs, but denied any drug addiction or drug abuse. Father claimed he is able to stay sober on his own, and did so for two years while in prison. He uses methamphetamine and marijuana, and has experimented with acid, mushrooms, and cocaine. The last time he used methamphetamine was in 2019 prior to his arrest for domestic violence. He smokes marijuana at night during the week, but he does not smoke in the children's presence and keeps the marijuana in a locked box inside the garage.

*Prior Referrals*

In April 2016, the Department filed a petition seeking to have M.C. and S.C. declared dependents and alleging that father had a history of substance abuse, was a current abuser of marijuana, mother failed to protect the children, the children had access to the parents' marijuana paraphernalia,

4

and father had a criminal history of a conviction for possession of obscene child pornography, was a registered sex offender, and was currently incarcerated for failing to register with law enforcement. The juvenile court dismissed the petition without prejudice in July 2016. A December 2016 referral alleging neglect and sexual abuse was investigated and determined to be unfounded.

A February 2019 referral raised concerns about father emotionally and physically abusing the children. The Department learned that when police responded to the home after the February 2019 domestic violence incident, father had used R.C. "as a shield to deter the police from entering the residence or taking him into custody." The Department noted that father appeared to suffer from mental health issues and was self-medicating with marijuana and methamphetamine. The referral was substantiated as to R.C., but was closed because safety measures were already in place. Specifically, while mother denied the domestic violence incident occurred and did not believe father was a threat to the children, she also reported that because of father's sex offender status, she never allowed him to be alone with the children. In addition, father was incarcerated following his arrest for domestic violence, and the criminal court had issued a 10-year restraining order protecting mother and R.C. from father. Mother was adamant about following the court orders even though she did not fully agree with them, and she declined any additional services from the Department. The investigating social worker later reported that she closed the investigation because father was incarcerated and it appeared that he would remain incarcerated for a long time.

*Department's Investigation Into the Current Allegations*

A. <u>Initial referrals and emergency investigation</u>

On February 14, 2020, the Department received a referral of potential neglect. The reporting party explained that mother was allowing M.C. and S.C. to live with father, who was a registered sex offender and who had mental health issues. Three days later, the Department received a second

referral when mother and father took all three children to the emergency room at Harbor UCLA, a local hospital, based on father's concerns that M.C. had been sexually molested. Father told the reporting party that M.C. had stated mother allowed men to enter the home and spray milk on the children's faces while mother recorded the act.[2] Mother denied any such activity.

A Department social worker responded to the emergency referral at the emergency room, and interviewed the treating nurse, mother, M.C., and S.C. The Harbor UCLA nurse explained that while no signs of sexual abuse were evident, the hospital was concerned because father initially took M.C. to a different hospital two weeks earlier, but did not act immediately when the first hospital told him they did not service children and recommended he take M.C. to Harbor UCLA. According to the nurse, father appeared coherent and showed no signs of mental illness, but mother told the nurse father suffers from mental illness and abuses drugs. Upon discovering the 10-year restraining order protecting mother and R.C. from father, a hospital deputy asked father to leave, and father complied. Speaking to the social worker, both M.C. and S.C. denied any mistreatment. However, after initially denying that anyone had touched her private parts, M.C. became animated and said someone had touched her on her "nana," and explained he was wearing a green hat and broke her toy.

Mother told the social worker M.C. and S.C. have been staying with father and paternal grandmother for about a month, and confirmed the 10-year restraining order protecting her and R.C. from father. Mother said she was not in the habit of violating the order, but father had been told to take M.C. to Harbor UCLA, and because he insisted on taking her today, mother and R.C. were at the hospital with father. Mother denied the children had

---

[2] Because no party has appealed the court's decision to dismiss the petition allegation concerning failure to protect from sex abuse (count b-1), we do not discuss at any length the evidence relating to that count, except as it might pertain to the counts currently under appeal. Interviews with the school and the children did not raise any red flags until father violated the safety plan by picking M.C. up from school.

been sexually abused.  Mother did not believe father would harm the children, but she was concerned about his mental health.  Father confirmed mother's explanation for why they were both at Harbor UCLA at the same time, and agreed to be interviewed by the social worker after mother drove him home.

The social worker interviewed father at his home later the same day. Father denied any mental health issues, explaining he was concerned for his daughters because M.C. and S.C. had reported on separate occasions that mother's friends were touching M.C., spraying white stuff on her, and taking pictures and video.  Father said mother denied the children's claims, and no one believes him because the children will not cooperate when questioned. He acknowledged past methamphetamine use, and told the social worker he was willing to drug test and would go to the hospital tomorrow for a mental health evaluation.  He also acknowledged he was a registered sex offender, but he never touched anyone and did not have any restrictions with his children.

The parents signed a safety plan agreeing that father would not be left alone with the children during the Department's investigation, father would receive drug testing and a mental health evaluation, and the children would have forensic interviews.  The investigation was transferred from an emergency social worker (McDonald) to another social worker (Byrd).

B. Additional interviews and investigation

Between February 20 and 27, social worker Byrd interviewed M.C., S.C., M.C.'s teacher and principal, and father.  Mother consented to M.C. and S.C.'s interviews, but mother was not available to be interviewed.  M.C.'s teacher stated that she had never met mother, and M.C. was usually picked up by father, paternal uncle, or paternal grandmother.  The teacher told the social worker that the day before, father had picked up M.C., and was not accompanied by anyone.  During M.C.'s interview, M.C. made statements to the social worker consistent with father's concerns about sex abuse.

During a February 27, 2020 interview, father reviewed his history of drug use.  In response to questions about the February 2019 incident, father

7

denied any domestic violence, claiming mother lied about him hitting her.  He said mother told law enforcement he was bipolar and off his medications, and that he was using methamphetamine.  When the social worker asked father why he violated the safety plan by picking M.C. up from school by himself, father admitted doing so and apologized.  Father lives in a four-bedroom home with paternal uncle and paternal grandmother, and the social worker observed it was dirty, cluttered, and unorganized, with evidence of hoarding.  Father sleeps on a couch in the living room and the children sleep on an air mattress near the couch.  The social worker developed a new safety plan with father agreeing to clean up the house, abide by the restraining order, not to pick up the children from school or day care or be around them without supervision, and not to question the children regarding sexual abuse.

### C. Father's mental health assessment

The social worker requested an assessment of father, based on concerns about father's substance use and his mental health, including father's suspicion that his children are being sexually abused.  The Department was concerned father "may be suffering from underlying mental health issues that may account for possible delusional/paranoid ideation."  The assessment took place on February 29, 2020, and the report concluded that father's suspicions about potential sexual abuse of his children "may be a cognitive distortion and concomitant bi-product [sic] of his meth abuse."  Father had reported using meth from 2005 until relatively recently, admitting that while he had been sober since 2018, he had slipped a couple of times.  The report also noted father's extensive criminal history, linking it to poor impulse control and judgment and placing father's parental capacity at risk.

### D. M.C.'s forensic interview

A Department social worker conducted a videotaped forensic interview of M.C. on March 17, 2020.  During the interview, M.C. described "a guy" who picked her up at school, took her to her mother's house, and put his finger inside her vagina.  M.C. said she bit the guy's finger and he was bleeding.

Several times during the interview, M.C. clarified, without prompting, that "the guy" was not father. M.C. also described a separate occasion where a guy picked her up and took her to Walmart, but there were no toys.

*Detention and Petition Allegations*

The court entered a removal order on March 20, 2020. The social worker then spoke to both mother and father, and on March 23, 2020, mother and paternal grandmother brought the children to Department offices, where they were transported to their foster placements. When paternal grandmother inquired about relative placement, the social worker recommended she raise that in court at the detention hearing.

The dependency petition as initially filed on March 25, 2020, included two identical counts under subdivisions (b) and (d) relating to the risk of sexual abuse (counts b-1 and d-1),[3] and two additional counts, one relating to father's history of substance abuse (count b-2) and one relating to his prior conviction for possession of child pornography (count b-3).[4]

On July 7, 2020, the Department filed an amended petition adding a fourth count relating to domestic violence (count b-4). The new allegation stated "[Mother and Father] have a history of engaging in violent verbal and

---

[3] Counts b-1 and d-1 alleged that an unknown person sexually touched M.C., and such conduct would not occur absent unreasonable and neglectful acts by mother and father. Such unreasonable and neglectful acts place M.C. and her siblings, S.C. and R.C., at risk of harm.

[4] Count b-2 alleged that father's history of substance abuse "including methamphetamine, cocaine and LSD" and current abuse of marijuana renders father incapable of providing regular care of the children. Mother was aware of father's substance abuse and failed to protect the children by allowing M.C. and S.C. to reside in father's home.

Count b-3 alleged: "[Father] has a history of a criminal conviction of Possess Obscene Material of Child Pornography. The father is a Registered Sex Offender. The father's criminal history and conduct endanger the children's physical health and safety, and places the children at risk of serious physical harm and damage."

9

physical altercations.  On 02/26/2019 the father was arrested for 243.5(A)(1) PC – Inflict Corporal Inj Spouse/Cohab and 273(A) PC-Child Cruelty: POS Injury/Death.  As a result [] the mother and child [R.C.] were issued a 10 year restraining order which is currently active.  Such violent conduct on the part of the father and the mother's failure to protect the children endangers the children's physical health and safety and places the children at risk of serious physical harm, damage, danger and failure to protect."

*Adjudication and Disposition*

The adjudication hearing took place on October 23, 2020.  The court admitted the Department's reports into evidence, as well as a transcript of M.C.'s forensic interview.  The court noted it had watched the full video. After hearing argument from all parties and brief testimony by mother, the court dismissed counts b-1, d-1, and j-1 (sex abuse) as well as count b-2 (substance abuse).  The court found true counts b-3 (child pornography conviction) and b-4 (domestic violence).

Turning to disposition, the court ordered all three children removed from father and placed with mother, making findings as to father under section 361, subdivision (c), and a finding of detriment if father was non-custodial.  The court ordered enhancement services (not reunification services) for father, and emphasized that if a risk still existed after six months of services, the case would be closed with father having monitored visits.  Father could address sexual abuse awareness in individual counseling, and submit to drug tests on reasonable suspicion.  The court granted father monitored visits with M.C. and S.C., but expressly restricted father from discussing case issues with them and clarified that mother was responsible for arranging transportation and she could not permit father to pick the children up alone.  The court ordered father to undergo a psychological assessment.

*Post-Appeal Developments*

On July 23, 2021, the juvenile court terminated jurisdiction over the children and entered a custody order granting mother and father joint legal custody, with mother having physical custody and father having monitored visits. We take judicial notice of the July 2021 orders of the juvenile court. (Evid. Code, §§ 452, subd. (d)(1), 455, 459.) On October 25, 2021, we invited the parties to submit letter briefs addressing whether, if we were to take judicial notice of the orders terminating jurisdiction, this court should dismiss father's appeal as moot under *In re Rashad* (2021) 63 Cal.App.5th 156. On November 1, 2021, father filed a letter brief arguing this court should consider the substance of his challenge to the jurisdictional findings, but conceding that his challenge to the dispositional orders was moot.

## DISCUSSION

Father contends there was insufficient evidence to support the jurisdictional findings that father posed a current risk of harm to the children based on the 2019 domestic violence incident (count b-4) and his criminal history and status as a registered sex offender (count b-3).

A. <u>Standard of Review and Applicable Law</u>

We review jurisdictional findings for substantial evidence. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.) "In doing so, we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders. Issues of fact and credibility are the province of the juvenile court and we neither reweigh the evidence nor exercise our independent judgment. [Citation.] But substantial evidence 'is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] . . . "The ultimate test is whether it is reasonable for a trier of fact to make the ruling

11

in question in light of the whole record." [Citation.]' [Citation.]" (*Ibid.*) Substantial evidence can be based on inferences that are grounded in logic and reason, but not speculation or conjecture alone. (*Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 420; *In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1093.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206; accord, *In re D.B.* (2018) 26 Cal.App.5th 320, 328–329.)

Dependency jurisdiction is warranted when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1); *In re R.T., supra,* 3 Cal.5th at p. 625.) Section 300, subdivision (b)(1) "authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child." (*In re R.T., supra,* at pp. 624, 627–633, 636–637, fn. 6 [disapproving *In re Precious D.* (2010) 189 Cal.App.4th 1251, and rejecting the reasoning requiring parental neglect for jurisdiction as set forth in *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820].)

"When the jurisdictional allegations are based solely on risk to the child, that risk must be shown to exist at the time of the jurisdiction finding." (*In re Yolanda L., supra,* 7 Cal.App.5th at p. 993.) To sustain an allegation based on risk of future harm to the child, that risk must be shown to exist at the time the court makes the jurisdictional finding, but the court need not wait until the child is seriously injured to assume jurisdiction. (*Ibid.*) "A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citations.]" (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384.)

B. Domestic Violence (count b-4)

Father contends the court erred in sustaining the domestic violence allegations as to M.C. and S.C. because the Department had previously investigated the matter and chosen not to file, and because the incident had

taken place 19 months earlier. Viewing the record as a whole, we disagree and conclude that the parents' past conduct provided substantial evidence for the court's conclusion that the children remained at risk of harm absent court supervision.

"Exposure to domestic violence may serve as the basis for dependency jurisdiction. [Citation.]" (*In re Cole L.* (2021) 70 Cal.App.5th 591, 603; *In re T.V.* (2013) 217 Cal.App.4th 126, 135 [exposing children to recurring domestic violence may be sufficient to establish jurisdiction under section 300, subdivision (b)]; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 [same]; *In re S.O.* (2012) 103 Cal.App.4th 453, 460–461 ["'domestic violence in the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it'"].) "One cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197; *In re V.L.* (2020) 54 Cal.App.5th 147, 156.)

We find substantial evidence to support the juvenile court's decision to sustain count b-4 (domestic violence) and declare the children dependents as described by section 300, subdivision (b). Although the police were only called for the February 2019 domestic violence incident, both parents acknowledged prior incidents. The additional evidence contained in the Department's reports provides a reasonable basis for the court to infer that absent court intervention, the children would be at risk of harm. That evidence supporting such an inference includes father's lengthy criminal and drug use history, father's current suspicion that M.C. and S.C. are being sexually abused by mother's boyfriends, and past instances when mother and father have ignored restrictions on father's unmonitored access to the children. The report summarizing an assessment of father's mental health expressed concern that father's suspicions about possible sexual abuse may be related to his past abuse of methamphetamine, and father's extensive criminal history indicated father had poor impulse control and judgment. There was evidence that father was using methamphetamine at the time of the domestic violence incident, and father also admitted that when the police arrived, he was carrying R.C. and feared being shot or struck with a taser. Both parents characterized the police response to the incident as dramatic.

13

Despite mother's earlier assurances to the Department in February 2019 that she never permitted father to be alone with the children, by February 2020 mother admitted that M.C. and S.C. had been living with father for over a month, even though mother was concerned that father's mental health was deteriorating. Also, mother and father admitted to violating the 10-year criminal protective order requiring father to stay away from mother and R.C. Mother explained to social workers that she did not seek the criminal protective order against father, and did not believe father posed a risk to any of her children. Mother acknowledged that the district attorney obtained a 10-year restraining order as part of the criminal prosecution against father, and mother stated she was not in the habit of violating the protective order. Despite the fact that the restraining order required father to stay away from mother and R.C., all three were at Harbor UCLA hospital together on February 14, 2020. Since M.C. had been living with father, it is unclear from the record why mother and R.C. needed to be present at the hospital, in violation of the protective order.

After the Department started its investigation in February 2020 and the social worker emphasized to both parents the importance of ensuring that father not be permitted to care for M.C. or S.C. until the investigation was complete, father still picked M.C. up from school, in violation of the safety agreement.

The parents' failure to recognize the seriousness of the restrictions imposed supports the court's determination that the children may still be at risk. The parents' statements minimizing the seriousness of the February 2019 incident, when considered in the context of other evidence presented by the Department, constitute substantial evidence to support the court's jurisdictional finding.

C. Prior Conviction (count b-3) and Removal Order

Because the juvenile court's order asserting jurisdiction based on father's domestic violence was correct, we decline to reach the merits of father's challenge to the jurisdictional finding based on his prior conviction relating to child pornography. (*In re L.O.* (2021) 67 Cal.App.5th 227, 237

14

[once a jurisdictional finding is found to be supported by substantial evidence, court has discretion to decline to review remaining jurisdictional findings]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence"].)

Father has also already conceded that based on the juvenile court's later custody orders and the order terminating jurisdiction the portion of the current appeal challenging the prior disposition orders is moot.

For these reasons, we dismiss the portions of father's appeal challenging the jurisdictional finding based on father's prior sex offense conviction and the October 2020 removal order.

## DISPOSITION

The court's jurisdictional finding based on domestic violence is affirmed.  The portions of father's appeal challenging the jurisdictional finding based on father's prior conviction for possession of child pornography and the removal order are dismissed.

MOOR, J.

We concur:

BAKER, Acting P. J.

KIM, J.

15