Filed 12/13/24  In re Victor L. CA2/7

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re VICTOR L., et al., Persons Coming Under the Juvenile Court Law. | B332812<br><br>(Los Angeles County Super. Ct. No. 23CCJP01804 A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>NATALIE C.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Natalie C. appeals from the juvenile court's jurisdiction findings and disposition orders, challenging the court's findings her three younger children are persons described by Welfare and Institutions Code section 300, subdivisions (a) and (b)(1).[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Natalie has three children with Jesus L. (with whom Natalie had been in a relationship for seven years and who did not appeal from the juvenile court's findings and orders): Victor L. (now seven years old), Anthony L. (now four), and Jesus C. (now two). Natalie has an older teenage daughter (now 17 years old), Dayzie, who has a different father. Jesus has two older children who reside with their mother (not Natalie).

The family has a history with the Los Angeles County Department of Children and Family Services, including a February 2016 referral (substantiated by the Department) against Jesus alleging he took out a gun in a room where his two older children were sleeping and threatened to kill their mother, the children, and himself; a December 2017 petition

_____

[1] Statutory references are to the Welfare and Institutions Code.

2

(sustained by the juvenile court) against Natalie alleging she neglected Victor when he tested positive for methamphetamine at birth; and a December 2020 referral (deemed inconclusive) against Natalie alleging a history of methamphetamine abuse.

In April 2023 the Department received two referrals about the family. One of them alleged Jesus emotionally abused Victor, Anthony, and Jesus C. The other alleged Dayzie had disclosed Jesus physically abused Natalie, including by grabbing her hair and hitting her, in the presence of the three boys (and Dayzie). Dayzie also said Jesus punished Victor by placing him in small spaces, including by putting his head in a washing machine, which caused Victor to scream and Dayzie to run to the laundry room and tell Jesus to stop.

In June 2023 the Department filed a petition with counts under section 300, subdivisions (a) and (b)(1), alleging Jesus and Natalie had a history of domestic violence in the presence of the children that created a substantial risk of serious physical harm to them. In September 2023 the juvenile court sustained the petition, declared Victor, Anthony, and Jesus C. dependent children of the court, and ordered the children to remain with their parents. The court also ordered Jesus and Natalie, among other things, to receive family preservation services, to participate in individual counseling, to complete a domestic violence program, and not to discuss the case with Dayzie. Natalie timely appealed, challenging only the jurisdiction findings.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

Section 300, subdivision (b)(1), "allows a child to be adjudged a dependent of the juvenile court when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of a custodian with whom the child has been left.'  A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements:  (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601; see *In re Gilberto G.* (2024) 105 Cal.App.5th 52, 61-62.)

Section 300 requires the child protective agency to prove a child is subject to the statutorily defined risk of harm at the time of the jurisdiction hearing.  (*In re Gilberto G.*, *supra,* 105 Cal.App.5th at p. 62; *In re M.D.* (2023) 93 Cal.App.5th 836, 848-849; *In re Cole L.*, *supra*, 70 Cal.App.5th at pp. 601-602.)  But the juvenile court "'need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.'  [Citation.]  And a parent's ""[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue.'"  [Citation.]  However, "'[t]o establish a defined risk of harm at the time of the hearing,

4

there 'must be some reason beyond mere speculation to believe the alleged conduct will recur."'"" (*In re S.F.* (2023) 91 Cal.App.5th 696, 712-713; see *Gilberto G.*, at p. 62.)

'"We review the jurisdictional findings for substantial evidence. [Citation.] We consider the entire record, drawing all reasonable inferences in support of the juvenile court's findings and affirming the order even if other evidence supports a different finding."' (*In re L.B.* (2023) 88 Cal.App.5th 402, 411-412; see *In re Gilberto G.*, *supra*, 105 Cal.App.5th at p. 62.) '"We do not consider the credibility of witnesses or reweigh the evidence."' (*L.B.*, at p. 412; see *Gilberto G.*, at p. 62.)

B.     *Substantial Evidence Supported the Jurisdiction Findings Under Section 300, Subdivision (b)(1), Based on Domestic Violence*

Natalie argues substantial evidence did not support the juvenile court's findings based on domestic violence. But it did, at least for the finding under section 300, subdivision (b)(1).[2]

---

[2]     '"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence."' (*In re I.J.* (2013) 56 Cal.4th 766, 773; see *In re M.R.* (2017) 7 Cal.App.5th 886, 896 ['"[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"'].)

"Exposure to domestic violence may serve as the basis for dependency jurisdiction. [Citation.] ""Both common sense and expert opinion indicate spousal abuse is detrimental to children."""" (*In re Cole L.*, *supra*, 70 Cal.App.5th at pp. 602-603.) "It is well settled that physical violence between a child's parents may support the exercise of jurisdiction under subdivision (b)(1) of section 300 where there is evidence that the domestic violence has placed the child at risk of physical harm and the violence is ongoing or likely to recur." (*In re L.B.*, *supra*, 88 Cal.App.5th at p. 411; see *In re S.O.* (2002) 103 Cal.App.4th 453, 460-461 ["'domestic violence in the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it'"].) Even where the child has not yet "been physically harmed, the cycle of violence between the parents constituted a failure to protect her 'from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.'" (*In re T.V.* (2013) 217 Cal.App.4th 126, 135.)

Substantial evidence supported the juvenile court's findings domestic violence between Jesus and Natalie created a substantial risk of serious physical harm to Victor, Anthony, and Jesus C. Dayzie reported that she had witnessed Jesus physically abuse Natalie on multiple occasions in the presence of the children, including an incident where Jesus called Natalie a bitch and grabbed her hair. Dayzie said she took Victor, Anthony, and Jesus C. out of the room and into a bedroom to protect them. Dayzie reported that on another occasion Jesus, again in the presence of the children, grabbed Natalie's hair and hit her on various parts of her body, causing Natalie to suffer

cuts and bruises. Dayzie said she remembered other instances where Jesus abused Natalie and inflicted bruises on her face and body.

Dayzie's therapist stated that, according to Dayzie, Jesus verbally and physically abused Natalie in the presence of the children. Dayzie described for the therapist an argument between Jesus and Natalie where Jesus called Natalie a name and hit her, causing bruises. Dayzie told the therapist that when Jesus and Natalie fight, Dayzie has to take the three younger children to a different part of the house. Dayzie also told the therapist about the incident where Jesus put Victor's head into a washing machine and Daizy had to tell Jesus to stop.

Victor, though only six years old at the time, stated during a visit to the family home by a case social worker that Natalie had thrown a laptop at Jesus, which made a hole in the wall at the foot of the stairs. Natalie admitted she had thrown the laptop at Jesus. (See *In re L.O.* (2021) 67 Cal.App.5th 227, 238 ["[j]urisdiction under section 300, subdivision (b)(1), applies when a parent fails, or is unable, to protect the child from a substantial risk of serious physical harm because of exposure to domestic violence" because the child "'could wander into the room where it was occurring and be accidentally hit by a thrown object'"].)

Natalie argues that Dayzie recanted her description of the incidents of domestic violence between Jesus and Natalie and that Jesus and Natalie suggested "Dayzie needed help." Dayzie didn't really recant, although she did change her story during a May 2023 interview at her school by a case social worker and did suggest all the problems at home had been resolved. On that occasion Dayzie told the social worker: "'I know why you're here. Ever since you guys have been at the house, they're changing.

They've changed a lot. Everything is fine now. The kids are fine.'" Dayzie also said Jesus and Natalie were "'doing better since'" the Department became involved with the family.

But Dayzie also disclosed why she was saying things were suddenly better: "'My mom said it's best I don't talk to [the Department] in general, and technically, I'm going against what she told me. It's better if I don't discuss this anymore.'" When the social worked tried to discuss the incidents of domestic violence Dayzie had previously reported, Dayzie stated her grandmother made her make the report, said she did not want to talk to the Department anymore, and walked away from the social worker. Thus, as the juvenile court recognized, the evidence showed Dayzie made the statements all was (now) well at home, which Natalie characterizes as recantations, because her family pressured and directed her to. The juvenile court credited Dayzie's initial statements, finding there was "no evidence to support why Daizey would make this up" and "nothing to suggest she would lie to her therapist" about the incidents of domestic violence between Jesus and Natalie. (See *In re A.R.* (2022) 78 Cal.App.5th 184, 190 ["[t]he juvenile court [is] in the best position to determine the credibility of the witnesses"]; *In re N.C.* (2019) 39 Cal.App.5th 81, 88 [we "accept the juvenile court's credibility determinations for purposes of appeal"].)

Natalie argues she and Jesus "denied all allegations of domestic abuse." Which is true: Natalie denied there were any domestic violence issues with Jesus. She denied Jesus pulled her hair, called her a bitch, or caused any bruises or marks on her body. She also denied Jesus disciplined Victor by putting his head in the washing machine. Natalie stated: "'I don't have

8

issues of domestic violence. There's no domestic violence in the household.'" Jesus similarly denied any domestic violence and said "[t]here is nothing going on." He told the case social worker: "'I've already dealt with you guys several times. Look for other people to target.'" He added: "'You have allegations, that' s all. You look for some proof, then come talk to me.'" Natalie's and Jesus's denials, however, only increased the risk of physical harm to Victor, Anthony, and Jesus C. (See *In re V.L.* (2020) 54 Cal.App.5th 147, 156 ["A parent's denial of domestic violence increases the risk of it recurring."]; *In re E.E.* (2020) 49 Cal.App.5th 195, 213 [parent's refusal to acknowledge responsibility for the conduct giving rise to the dependency proceedings supports a finding the child faces a current risk of harm]; *In re T.V., supra*, 217 Cal.App.4th at p. 133 ["[a] parent's past conduct is a good predictor of future behavior"]; see also *In re D.B.* (2020) 48 Cal.App.5th 613, 622 ["'One cannot correct a problem one fails to acknowledge.'"].)

Finally, Natalie argues that, "[e]ven if there had been substantial evidence of risk at the time" the Department filed the petition in June 2023, by the time of the jurisdiction hearing in September 2023, "the children had been in the home with their parents for six months [*sic*] with no evidence of domestic violence or inappropriate care of the children." The juvenile court, however, could reasonably infer three months (June to September) was not enough time to address, treat, and ameliorate the effects and risks of a history of domestic violence between Jesus and Natalie (and between Jesus and the mother of his other children) or to demonstrate the children were safe from the potential harm of exposure to domestic violence. (See *In re R.T.* (2017) 3 Cal.5th 622, 633 [substantial evidence includes

9

reasonable inferences].)  Moreover, Jesus and Natalie refused to cooperate with the Department or participate in services,[3] and the family pressured Dayzie not to speak with Department social workers anymore, all of which cast doubt on whether there really were no incidents of domestic violence during those three months. And, as discussed, the juvenile court did not have to wait until the next episode of domestic violence risked injuring one of the children to exercise jurisdiction.  (See *In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993; see also *In re V.L., supra*, 54 Cal.App.5th at p. 156 ["Even if a child suffers no physical harm due to domestic violence, a 'cycle of violence between . . . parents constitute[s] a failure to protect [a child] "from the substantial risk of encountering the violence and suffering serious physical harm or illness from it."'"].)

---

[3]     Natalie and Jesus stated they would not accept or participate in any Department services unless the court ordered them to.  Natalie refused to meet with anyone from the Department, declined to submit to drug testing, and said she was "not interested" in the Department.  Jesus told a case social worker he did not even want her business card, adding:  "There is nothing going on.  So have a nice day."

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders are affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.

11