Filed 3/25/26  In re A.J. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.J. et al., Persons Coming Under the Juvenile Court Law. | B343593 (Los Angeles County Super. Ct. No. 24CCJP03159A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.W.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Cathy J. Ostiller, Judge.  Affirmed.

Heather Tesdahl, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

In this juvenile dependency appeal, A.W. (mother) challenges the juvenile court's sole jurisdictional finding pertaining to her. In particular, mother argues substantial evidence does not support the court's finding that she put her children, A.J. (daughter) and I.J. (son), at risk by failing to protect them from their father's domestic violence against her.

After mother filed her appeal, the juvenile court terminated jurisdiction and granted sole physical custody of the children to mother and joint legal custody to the parents. Thus, as an initial matter we address whether mother's appeal is moot. Although we determine it is, we exercise our discretion to consider it on the merits nonetheless. We conclude substantial evidence supports the jurisdictional finding pertaining to mother and affirm.

## BACKGROUND

This is not the first time this case has come before us. Although mother and father both appealed the juvenile court's November 18, 2024 orders, we considered father's appeal first. Father did not challenge the jurisdictional findings pertaining to him. Rather, he challenged the court's removal and visitation orders. In a nonpublished opinion, we affirmed the juvenile court's November 18, 2024 orders removing the children from father. We dismissed as moot father's challenge to the court's

2

monitored visitation orders. (*In re A.J.* (Dec. 23, 2025, B342504).) Because mother's instant appeal arises from the same November 18, 2024 orders, rather than repeat the factual and procedural background of this case, we incorporate by reference our previous opinion.

We briefly summarize the juvenile court's findings and orders as relevant to the instant appeal. At the combined November 18, 2024 adjudication and dispositional hearing, the juvenile court sustained the Welfare and Institutions Code section 300 petition and declared daughter and son dependents of the court under subdivisions (a) and (b) of section 300.[1] The court found the underlying domestic violence incident "was a very, very serious incident of domestic violence" and not the first incident of domestic violence between the parents. The court did not believe it "was an isolated incident that would go immediately from nothing to choking to the point of almost making mom lose consciousness." The court found there was "some prior domestic violence in this family," noting maternal aunt confirmed this. Additionally, given the parents' stated goal to reunify as well as father not having yet completed his criminal court programs, the court found a current risk existed. The court explained until it was "satisfied that father has resolved his issues, a desire by the mother to reunify does give rise to a concern about current risk."

The court released the children to mother under supervision of the Los Angeles County Department of Children and Family Services (Department). Mother was ordered to participate in a domestic violence group for victims, individual

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

3

counseling to address, among other things, domestic violence and its impact on children and her relationship with father. If mother intended to reconcile with father, and therapists recommended it, the court also ordered mother to participate in conjoint counseling.

Mother appealed the juvenile court's November 18, 2024 orders. Almost one year later, on October 28, 2025, the juvenile court terminated its jurisdiction and entered a final custody order granting sole physical custody of the children to mother and joint legal custody to both parents.[2]

## DISCUSSION

### 1. Mootness

As noted above, after mother filed the instant appeal, the juvenile court terminated its jurisdiction and granted mother sole physical custody of the children. Mother argues those postappeal orders did not render her appeal moot. First, mother claims the sustained subdivision (a) count will result in her inclusion in California's Child Abuse Central Index, which would affect her legal rights. However, both parties agree the subdivision (a) count does not pertain to mother. Accordingly, we do not address that count and mother's argument as to justiciability based on that count is not persuasive.

Second, mother argues the sustained subdivision (b) count could affect her ability to obtain employment in certain childcare-related fields. However, there is no indication mother is looking for, or will be looking for, employment in such fields. Thus, her position is based on pure speculation, which is insufficient to

---

[2] We granted mother's request for judicial notice of the juvenile court's October 2025 final custody order.

4

demonstrate her appeal is not moot.  (*In re D.P.* (2023) 14 Cal.5th 266, 278, 282.)

Mother makes no further argument, and we can think of none, as to why the October 2025 postappeal orders did not render her appeal moot.  Accordingly, we conclude mother's appeal is moot.  Nonetheless, we exercise our inherent discretion to consider the merits of mother's appeal, a result the Department does not oppose.  (*In re D.P., supra*, 14 Cal.5th at p. 285.)

**2.    Jurisdiction**

**a.    Applicable Law and Standard of Review**

Although the juvenile court exercised its discretion under both subdivisions (a) and (b) of section 300, only the subdivision (b) finding pertains to mother.  Under that subdivision, a juvenile court may assert dependency jurisdiction over a child when, among other things, "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child."  (§ 300, subd. (b)(1)(A) (subdivision (b)).)

"The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.'  (§ 300.2, italics added.)  'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' "  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  " 'The purpose of dependency

5

proceedings is to prevent risk, not ignore it.' " (*Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1104.)

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings [and disposition order] of the trial court." ' " (*Ibid.*) In determining whether substantial evidence exists such that a reasonable trier of fact could find the order challenged on appeal is appropriate, we review the entire record in the light most favorable to the challenged order. (*Ibid.*)

"Substantial evidence is evidence that is 'reasonable, credible, and of solid value'; such that a reasonable trier of fact could make such findings." (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.) Substantial evidence " 'is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal.' " (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.)

6

### b. Substantial evidence supported dependency jurisdiction under subdivision (b).

Mother argues substantial evidence does not support the finding that the children were at risk due to her failure to protect them from father's domestic violence against her. We disagree.

As an initial matter, it is undisputed the children were present during the August 2024 domestic violence incident (August incident) and that mother and father desired eventually to reunify. Further, the record includes evidence that the August incident was not an isolated event and involved severe domestic violence. For example, the police report from the August incident reflects that mother told responding officers "there have been multiple reported/unreported incidents of DV in the past but was unable to provide an exact number." There also was a 911 call the previous year from mother's apartment building involving a "violent struggle" with a male, although no crime was reported and mother denied she made the call or that the incident involved her. In addition, mother revealed to maternal aunt that, six months before the August incident, father had slapped her. Maternal aunt also reported mother told her " '[s]he blacked out and thought her life was going to end' " during the August incident. When initially interviewed, mother and daughter similarly described a violent encounter that involved father choking mother, lifting her off the ground by her throat, and headbutting her.

Soon after the August incident, mother began minimizing what had occurred. Mother retreated from her initial statements about the severity of the domestic violence, stating, for example, father neither forcefully choked her nor headbutted her. Mother believed she had escalated the situation by referencing a rival

gang. Moreover, mother did not appear to appreciate the negative effect domestic violence could have on the children. Additionally, father and daughter gave conflicting statements about the August incident. Although daughter told a Department social worker that she saw father shoot a gun immediately following the August incident, daughter later changed her story and said that did not happen. Father initially and repeatedly insisted he did not have a gun, only later to admit he did have a gun and indeed had fired it the night of the August incident.

On appeal, mother points to evidence in the record that suggests the August incident was an isolated incident and there was no history of domestic violence between mother and father. For example, mother notes she told a Department social worker the August incident was the first domestic violence incident with father. Mother said she did not tell law enforcement otherwise. Mother also highlights evidence in the record demonstrating commendable actions she and father took following the August incident. For example, mother and father participated in services, were willing to take steps to protect against future domestic violence, and were abiding by the criminal protective order.

In sum, the record contains evidence supporting the challenged jurisdictional finding as well as evidence supporting mother's position on appeal. Mother wants us to reweigh the evidence and side with her. However, this is inconsistent with the applicable substantial evidence standard of review. We cannot reweigh the evidence or make credibility determinations. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) Despite contradictory and changing statements, substantial evidence supports a finding

both that mother failed to protect the children from domestic violence that appeared to be escalating between her and father and that the risk to the children remained because mother minimized the domestic violence, did not appear to understand the dangers domestic violence posed to her children, and wanted to reunite with father, who only recently had begun his court-ordered services through his criminal case.  Thus, on the record before us, we conclude a reasonable trier of fact could find the challenged jurisdictional finding was appropriate.  (*Ibid.*)

Finally, we are not persuaded by the cases on which mother relies because they are either factually or procedurally distinct, or both.  (See *In re R.L.* (2025) 115 Cal.App.5th 221; *In re Daisy H.* (2011) 192 Cal.App.4th 713; *In re J.N.* (2010) 181 Cal.App.4th 1010.)

## DISPOSITION

As discussed above, substantial evidence supports the challenged finding, and the orders entered pursuant thereto are affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

CHAVEZ, J.

GILBERT, J.*

---

\* Retired Presiding Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.