Filed 4/27/26  In re A.A. CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | C103998 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2025-0000131) |
| Plaintiff and Respondent, | |
| v. | |
| A.W., Defendant and Appellant. | |

Appellant A.W. (mother) appeals the juvenile court's dispositional orders removing newborn Alex A. (the minor) (Welf. & Inst. Code, § 361, subd. (c))[1] and bypassing mother for reunification services (§ 361.5, subd. (b)(6)).  She contends the court erred in detaining the minor at the initial hearing and in finding mother waived her right to contested hearing/trial on the jurisdiction/disposition through her nonappearance. She also contends substantial evidence does not support the court's removal findings or

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

1

the section 361.5 subdivision (b)(6) bypass.  Disagreeing, we affirm the orders of the juvenile court.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 2025, the minor was placed in protective custody by the San Joaquin County Human Services Agency (Agency) pursuant to a warrant following his premature birth the week before.  Mother's oldest child, I.H., was removed as an infant in 2018 following suspicious injuries and adopted by a relative.  Mother's next child, M.A., was also removed as an infant in 2024.  We describe those two cases in detail in our Discussion, *post*.  Mother reported having all necessary supplies to care for the minor, and that she had not used marijuana for a year or methamphetamine for three years.  She and the minor tested negative for drugs, and the nurse had no concerns with mother's interactions with the minor; mother was breastfeeding and pumping and otherwise acted appropriately.

Mother told the investigating social worker that she had completed a drug program, parenting classes and therapy (in M.A.'s dependency case), but her services were terminated when she was bypassed.  Maternal great-grandmother offered to allow mother and the minor to live with her if needed.  While acknowledging the extensive services completed by mother in M.A.'s case, the report identified mother as a high risk because of her failure to acknowledge the severe injuries suffered by I.H. six years before and her inconsistent explanations for those injuries.  The Agency recommended out-of-home placement.

The petition alleged the minor fell within the provisions of section 300, subdivisions (b)(1) and (j).  The failure to protect subdivision (b)(1) allegations were that the minor had suffered or was at substantial risk of suffering "serious physical harm or illness as a result of the failure or inability of his or her parent or legal guardian to supervise or protect the child adequately" and/or "by the willful or negligent failure of the parent or legal guardian to provide the child with adequate food, clothing, shelter, or

2

medical treatment." The facts supporting these allegations pertaining to mother were based solely on I.H.'s and M.A.'s cases. The abuse of sibling (subdivision (j)) allegations stated that the minor's "sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i)" and there was "a substantial risk" that the minor would "be abused or neglected, as defined in those subdivisions." The supporting factual allegations relied upon I.H.'s and M.A.'s cases.

At the April 2025 initial hearing, mother objected to detention in light of the undisputed "significant strides to change her life," including sobriety and therapy. The juvenile court referenced I.H.'s "absolutely life-threatening non-accidental injuries that occurred previously" and mother's only recent acceptance of how they occurred, and detained the minor, finding probable cause that he would be at risk of substantial danger and that no reasonable means could prevent his removal. But the court acknowledged mother's efforts and honesty, telling her that it was only the beginning of the case and referred her to drug court, granting her liberal supervised visitation.

The Agency's jurisdiction report filed May 1, 2025, attached records related to the siblings' previous dependency cases and recommended the juvenile court find the allegations true based solely on those cases. Mother attended the originally scheduled jurisdiction hearing on May 8, 2025. Her counsel requested the jurisdiction and disposition hearings be held together, and the court continued the combined hearing to June 3, 2025. The court ordered mother to appear, stating the date, time, and place of the hearing three times, and warning her counsel to "make sure that she's here" because "if she's not here, the hearing will go forward without her."

On June 2, 2025, the Agency filed a disposition report recommending bypass pursuant to section 361.5 subdivision (b)(6). Mother had failed to respond to the social worker's attempts to interview her and had texted the social worker stating verbatim in pertinent part: " 'I have been completely open and upfront with CPS about everything in my past how I struggled with addiction but got clean on my own so I could still be in my

3

son's life but it got twisted up into a bunch of dishonest false allegations and used to keep me from him and now two siblings doctor said I would never have for no reason.... I don't trust anyone from the agency anymore really don't understand I'm not guilty of wrong doing I thought I did everything right that any good mom would do in best interest of their children. I just have to step back and take a break it's too hard I feel overwhelmed with to much hurt and devastation.' "

Certificates of completion and progress notes showing mother had finished various services in M.A.'s case were attached to the disposition report. But the social worker opined the minor could not be safely maintained in mother's home given the prior dependency cases and lack of contact with the social worker, recent dismissal from drug court for nonparticipation, and failure to contact the assigned service providers. She had also missed two scheduled visits. The social worker noted "[i]t seems that [mother] may have just given up, believing that this case would result in the same decision as the prior case involving, [M.A.], and therefore made the decision to not participate in any services in an effort to reunify. Thus, leaving the agency with no other option other than to have to make that exact decision." "[M]other's continued denial and deflection causes the undersigned to believe that the minor, … could be at risk of suffering harm if he were returned to the care of his mother."

Mother failed to appear at the June 3, 2025, jurisdiction/disposition hearing; her counsel entered a general objection to jurisdiction and asked that disposition be continued as counsel did not know mother's position, given her absence. The juvenile court found mother had received proper notice and had waived her right to trial and took jurisdiction of the case based on the "factual basis contained within the jurisdiction report." The court continued the disposition hearing.

Mother did not appear at the continued hearing held on June 17, 2025. The juvenile court found notice had been given; counsel for mother indicated when asked that counsel "had an opportunity to speak with my client's mother but not with my client."

Counsel later added that "in speaking with my client's mother, she indicates that the family would like for me to set the recommendation contested"; the court responded that "mother needs to be here for me to do that. I'm not taking it from any family. … [T]oday I am going to go forward because notice appears to be good." The court adopted the Agency's proposed findings and orders, removing the minor from mother and bypassing her for reunification services. Mother timely appealed.

## DISCUSSION

Mother claims error in the minor's detention in the form of incorrect factual findings at the hearing; she also argues the juvenile court erred in holding the jurisdiction and disposition hearings in her absence. She adds that the removal and bypass orders were not supported by substantial evidence.

As we have already set forth, the Agency and the juvenile court considered the previous dependency cases concerning the minor's older siblings, I.H. and M.A., at length when making decisions in the minor's case. And mother's briefing relies heavily on the recent opinion of another panel of this court that reversed the order bypassing reunification services to one of those siblings, M.A. (*In re M.A.* (Dec. 17, 2025, C103159) [nonpub. opn.].) Accordingly, we begin with a brief discussion of the previous dependency cases as well as the relevant conclusions of the *M.A.* opinion.

I

*The Previous Cases*

*In re M.A.* described the dependency of the minor's older half sibling I.H. in pertinent part as follows:

"I.H. was born to mother at 28 weeks and admitted to the neonatal intensive care unit (NICU). In December 2018, when I.H. was approximately seven months old, mother brought him to the emergency room with a fever, cough, and chest pain. X-rays revealed broken ribs in various stages of healing. I.H. also had multiple crescent-shaped, deep abrasions on both flanks, abdomen, and below the breastbone. Before mother was told

5

about the broken ribs, she suggested I.H.'s injuries were caused by a puppy, which they no longer had, and denied that he had been exposed to trauma. After learning of the fractures, mother gave inconsistent reasons for the injuries, such as the puppy, an issue with a car seat, and cosleeping with I.H. at her feet. She was unable to provide a date that he was injured. According to a child abuse expert, these causes were inconsistent with the nature of I.H.'s injuries, which indicated intentional physical abuse.... I.H.'s injuries ... had occurred over time, and were likely to reoccur and/or escalate without intervention. I.H. was taken into protective custody, and a skeletal survey revealed a fracture of the right femur and possible fracture of the left tibia ....

"The Sacramento County Juvenile Court declared I.H. a dependent in February 2019. Mother was offered reunification services through an exception to bypass; however, those services were soon terminated due to mother's nonparticipation. Mother's parental rights to I.H. were terminated in November 2019. I.H. was adopted by his caregiver, maternal great-aunt L.H., and dependency jurisdiction terminated in 2020.

"In October 2019, mother was convicted of felony child endangerment (Pen. Code, § 273a, subd. (a)) for which she received a grant of five years' probation including that she serve 300 days in jail. A five-year protective order issued prohibiting mother from contacting I.H." (*In re M.A.*, *supra*, C103159.)

The opinion described the dependency of M.A. in pertinent part as follows:

"M.A. was born in April 2024 at 36 weeks and placed in the NICU due to respiratory issues. Mother tested positive for marijuana and admitted to weekly marijuana use throughout her pregnancy. She intended to breastfeed M.A. and promised to stop smoking marijuana. M.A.'s initial drug test was negative. When asked about [I.H.'s] 2018 case, mother explained that I.H. was injured from rolling on him during cosleeping and during a car accident where he was not in his car seat. She did not take I.H. to the doctor because he stopped crying after the accident and did not appear injured. This accident had been her boyfriend R.Z.'s explanation for I.H.'s injuries back in 2018.

6

Mother explained she failed to participate in previous services because she was homeless, ashamed, and had lost familial support.

"On April 19, 2024, the San Joaquin County Human Services Agency (Agency) filed the section 300 petition at issue in this case alleging M.A. had suffered or was at substantial risk of suffering serious physical harm or illness. The petition alleged five sets of facts supporting this allegation, four of which pertained to mother. These included mother's substance abuse, as well as detailed allegations concerning I.H.'s injuries from the 2018 case and that mother's parental rights to I.H. had been terminated.

"In April 2024, the juvenile court temporarily detained M.A. over mother's objection with services to be provided pending the jurisdiction and disposition hearings. The court further approved mother's assessment for drug court, granted mother supervised visitation, and approved out-of-county placement with the maternal great-aunt L.H." (*In re M.A.*, *supra*, C103159.)

Mother regularly visited M.A. and completed numerous services including residential drug treatment, parenting classes and individual counseling prior to the hearings on jurisdiction and disposition that did not occur until early 2025. (*In re M.A.*, *supra*, C103159.) Mother submitted on jurisdiction but opposed the Agency's request to bypass her reunification services pursuant to section 361.5, subdivision (b)(6). (*In re M.A.*, *supra*, C103159.) The Agency acknowledged mother's rehabilitative efforts but argued her extreme reluctance to take responsibility for what happened to I.H. (including "consistent denials despite the receipt of extensive services"), leading the Agency to suspect that mother caused I.H.'s injuries, thus endangering M.A. (*Ibid.*) "[A]s a result, the Agency argued, there was not clear and convincing evidence that it was in M.A.'s best interests for mother to receive reunification services. M.A.'s counsel concurred with the Agency, highlighting mother's lack of insight as well as that I.H.'s injuries were extreme and occurred over time." (*Ibid.*) The juvenile court agreed with the Agency,

7

bypassing mother's reunification services and adopting the proposed findings and orders of the Agency's reports dated May 6, 2024, and June 7, 2024. (*Ibid.*)

As relevant here, *In re M.A.* upheld M.A.'s removal. (*In re M.A.*, *supra*, C103159.) While acknowledging mother's successful completion of "residential and outpatient drug treatment programs through drug court to combat her lengthy history of using methamphetamine and marijuana," *M.A.* noted that "serious questions raised by the severity of I.H.'s injuries incurred over a period of time and mother's continued denial of accountability for the injuries, as well as M.A.'s tender age, supported the juvenile court's decision that there were no reasonable means other than removal to protect M.A. from a substantial risk of physical harm." (*Ibid.*) However, *M.A.* reversed the bypass order. (*Ibid.*) In light of mother's substantial compliance with and commitment to reunification services, the Agency had not provided substantial evidence supporting the required finding that M.A. would not benefit from receiving reunification services (§ 361.5, subd. (b)(6)). (*In re M.A.*, *supra*, C103159.)

II

*Detention Claim*

Mother first argues the juvenile court abused its discretion in initially detaining the minor because the court was operating under the mistaken belief that older sibling I.H. had suffered "life threatening" (as opposed to merely severe) injuries. She argues this "critical factual error" resulted in "fundamentally unfair" proceedings in violation of due process. But the challenge to the initial detention order (§ 319) was rendered moot by the juvenile court's dispositional order removing the minor (*In re Julian H.* (2016) 3 Cal.App.5th 1084, 1088, fn. 7). It is also factually inaccurate, as we briefly explain.

Although mother argues the record directly refutes the juvenile court's factual determination that I.H.'s injuries were "absolutely life-threatening," referencing evidence attached to the jurisdiction report, this report/attachment was not before the court when it detained the minor. Instead, the court was relying on the petition and detention report;

8

those materials related that I.H. (then under age one) had been admitted to the hospital with over 20 rib fractures in various stages of healing and at least one broken leg bone. Given the severity of these injuries and I.H.'s tender age, the court's statement that the injuries were life-threatening was supported by the evidence before it at the time. The subsequent decision to remove the minor, which moots this claim, was based on the later evidence, which also signals there was no due process violation in the minor's detention.

### III

### *Waiver of Trial on Disposition*

Mother next argues the juvenile court erred in finding her nonappearance at the jurisdiction and disposition hearings operated to waive her right to trial. She observes the court failed to explicitly find her nonappearance was willful and cursorily argues, without supportive authority, that the court was not permitted to proceed in her absence. The authority is to the contrary; no error appears.

" 'When a parent is absent without good cause at a properly noticed hearing,' ..., 'the court is entitled to proceed in the parent's absence.' [Citation.] Ordinarily, a parent's failure to appear will not constitute the good cause necessary to justify a continuance because substantial importance is attached to the child's need to promptly resolve the dependency matter. [Citations.] Thus, '[a]n unjustified failure to appear at a duly noticed hearing reflects a parent's choice not to attend,' and the juvenile court 'may properly treat this choice as a waiver of the right to be present *at that hearing* and of the benefits of being present.' " (*In re A.V.* (2021) 73 Cal.App.5th 949, 957.)

There appears no dispute that mother was present at the original jurisdiction hearing held on May 8, 2025, and at its conclusion was ordered to attend the June 3, 2025, hearing. She was given the date and time and location three times and warned that the court would proceed in her absence if she failed to appear. When she nonetheless failed to appear, her attorney did not offer an excuse and did not know her position. Regardless, the disposition *was* continued and mother again failed to communicate with

9

her attorney or appear at the June 17, 2025, disposition hearing.  It is undisputed that notice for all hearings was properly given and no excuses were advanced for mother's absence.  The juvenile court did not err when it determined that mother's nonappearance had waived her right to trial on the subsequent findings.

IV

*The Removal Order*

Mother next contends the juvenile court's removal order is unsupported by substantial evidence.  We disagree.

A child may be properly removed from a parent's home if the child protective agency establishes by clear and convincing evidence that (1) "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home" and (2) "there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  In cases such as this one, a juvenile court considers the current risk to the child given the parent's past conduct and present circumstances.  (§ 361, subd. (c)(1); see *In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)  It is not necessary to show prior harm to the child; rather, the statute focuses on averting that harm.  (*In re Cole*, at p. 917.)

We review the juvenile court's findings for substantial evidence keeping in mind the clear and convincing evidence standard of review.  (*In re Zoe H.* (2024) 104 Cal.App.5th 58, 71.)  This has been described as " 'whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' "  (*In re M.V.* (2022) 78 Cal.App.5th 944, 960.)  In conducting this review, we consider "the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence."  (*Conservatorship of O.B.* (2020) 9 Cal.5th

10

989, 1011-1012.) " ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) " ' "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." ' " (*In re Yolanda. L.* (2017) 7 Cal.App.5th 987, 992.)

The juvenile court removed the minor "based on the facts in paragraph 5A on page 25 of the [disposition] report." Paragraph 5A states: "There is a substantial danger to the physical health, safety, protection, physical and emotional well-being of the child or would be if the child was returned home, and there are no reasonable means by which the child's physical health, safety, protection, physical and emotional well-being can be protected without removing the child from his parents' physical custody." Although mother argues the removal order "was based [on] an erroneous and uncorrected finding that I.H.'s injuries were life threatening," this argument is not supported by the record and mother's briefing does not cite a source.

Mother also contends the court's finding of risk is "irreconcilable with the evidence." We disagree. The evidence of the abuse of I.H. and the inconsistent explanations offered by mother therefor were compelling. There were: "24 rib and two leg fractures in various stages of healing (some acute, some old). These injuries were consistent with nonaccidental trauma. [The doctor] opined the rib fractures were from compression squeezing, associated with abuse, and unlikely to stop and could even escalate without intervention. The leg fractures were likely from pulling and twisting and thus associated with abuse. Neither mother's nor her boyfriend's explanations were consistent with I.H.'s injuries. Although mother was initially offered reunification services pursuant to an exception to bypass (§ 361.5, subd. (c)(2), (3)) those services were terminated following mother's failure to visit I.H. or stay in contact with the Agency." (*In re M.A.*, *supra*, C103159.)

11

"Moreover, mother was convicted in October 2019 of felony child endangerment (Pen. Code, § 273a, subd. (a)) and a court issued a five-year protective order prohibiting mother from contacting I.H." (*In re M.A.*, *supra*, C103159.)

As for the more recent dependency case, our record does reflect mother's successful completion of services related to M.A.'s case, including a 90-day drug treatment program, parenting classes, anger management, and counseling. But here, in sharp contrast, mother was nonresponsive to the social worker, failed to begin any of her referred services, was dismissed from drug court for nonparticipation, and missed visits.

Mother's arguments that the current risk and minimal progress findings were unsupported are not well taken. These arguments ignore that mother was not participating in any services in the minor's case; they also ignore that this court *upheld* M.A.'s removal from mother despite her completion of services in M.A.'s case. (*In re M.A.*, *supra*, C103159.) Mother's current refusal to participate in services combined with the nature of the injuries in I.H.'s case underscores the risk she presented to the minor. Under these circumstances, even a low risk of reoccurrence supported an order removing the minor. (See, e.g., *In re D.B.* (2018) 26 Cal.App.5th 320, 331-332 [" ' "Some risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great" ' "].) Further, given the extensive documentation of I.H.'s numerous injuries inflicted at different times, the record supports a finding of future harm, distinguishing mother's authorities. (See, e.g., *In re Yolanda L.*, *supra*, 7 Cal.App.5th at p. 993 [future danger cannot be inferred from a single previous act]; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1433-1440 [a single instance of rape (six years prior) and a single incident of serious physical abuse (two years prior) supported risk of future harm for purposes of removal].)

Finally, mother asserts that reasonable means existed to prevent removal. Without citing the record, her brief explains that "mother would be willing to participate in random drug testing, complete DDC [drug dependency court], attend counseling, and

agency oversight through family maintenance." But the record is to the contrary as mother refused to attend hearings and communicate with the Agency social worker beyond the text set forth above describing her need to "step back" and "take a break," which she apparently did. The reasonable means claim is specious.

V

*The Bypass Order*

Finally, mother contends substantial evidence does not support the juvenile court's bypass order and that the court's ruling failed to adhere to procedural requirements. We remain unpersuaded.

"[W]hen a child is removed from the custody of their parent, the juvenile court *must* provide the parent with reunification services *unless* it finds by clear and convincing evidence the case falls within one of the 17 enumerated exceptions in section 361.5, subdivision (b), commonly called 'bypass provisions.' (See § 361.5, subd. (a).) If the court finds by clear and convincing evidence that a bypass provision applies, it must deny services unless the parent proves that services would be in the child's best interests. (§ 361.5, subd. (c).)" (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1148.) While the parent bears the burden of proof on the last issue, the child protective agency bears the burden of proving the threshold issue of whether a bypass provision applies. (*Ibid.*)

We review the juvenile court's factual findings for substantial evidence and must account for the heightened standard of proof by asking "whether 'the record as a whole contains substantial evidence from which a reasonable fact finder could have found it *highly probable* the fact was true.' " (*In re T.R.*, *supra*, 87 Cal.App.5th at p. 1150.)

Section 361.5 subdivision (b)(6) applies where "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of ... the infliction of severe physical harm to the child, a sibling, or a half sibling by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian."

13

(§ 361.5, subd. (b)(6)(A).)  Thus, as relevant here, subdivision (b)(6) requires a child protective agency to establish by clear and convincing evidence both the infliction of severe physical harm and that the child will not benefit from reunification services.  (*In re T.R.*, *supra*, 87 Cal.App.5th at pp. 1148-1149.)

As relevant here, "[a] finding of the infliction of severe physical harm, for the purposes of ... subdivision [(b)(6)], may be based on, but is not limited to, deliberate and serious injury inflicted to or on ... the body of a ... half sibling of the child by an act or omission of the parent or guardian."  (§ 361.5, subd. (b)(6)(C).)  This statute requires the juvenile court to consider certain enumerated factors as well as "any information it deems relevant" in determining whether a child would benefit from reunification services under subdivision (b)(6).[2]  (§ 361.5, subd. (i).)  The juvenile court must "read into the record the basis for a finding of ... the infliction of severe physical harm under paragraph (6) of subdivision (b), and shall also specify the factual findings used to determine that the provision of reunification services to the offending parent or guardian would not benefit the child."  (§ 361.5, subd. (k).)

---

[2]  The enumerated factors are:  "(1) The specific act or omission comprising the ... the severe physical harm inflicted on the child or the child's sibling or half sibling.  [¶]  (2) The circumstances under which the abuse or harm was inflicted on the child or the child's sibling or half sibling.  [¶]  (3) The severity of the emotional trauma suffered by the child or the child's sibling or half sibling.  [¶]  (4) Any history of abuse of other children by the offending parent or guardian.  [¶]  (5) The likelihood that the child may be safely returned to the care of the offending parent or guardian within 12 months with no continuing supervision.  [¶]  (6) Whether or not the child desires to be reunified with the offending parent or guardian."  (§ 361.5, subd. (i).)  Mother's assertion that the trial court failed to consider the "facts" outlined in section 361.5, subdivision (i) is unsupported by the record.  In the absence of evidence to the contrary, we presume the juvenile court followed the law and considered appropriate factors when making its determination.  (Evid. Code, § 664; *In re Julian R.* (2007) 47 Cal.4th 487, 498-499; *Ross v. Superior Court of Sacramento County* (1977) 19 Cal.3d 899, 913-914.)  Subdivision (i) required the juvenile court to consider factors but did not require the court to articulate its consideration of them on the record.

Although mother argues the juvenile court failed to comply with the requirements of section 361.5, subdivision (k) when determining no reunification services would be provided pursuant to section 361.5 subdivision (b)(6), the court did provide that "[t]he other recommendations of the social worker are incorporated and made part of today's orders and findings." Reviewing those recommendations and findings, it is clear that the court incorporated by reference the required findings and facts supporting them. That the minor would not benefit from reunification services with mother is also supported by the Agency's disposition report, as we next explain.

Juvenile court finding number 13 states: "The Court finds by clear and convincing evidence that [I.H.], the half-sibling of the child, has been adjudicated a dependent of the Juvenile Court as a result of the infliction of severe physical harm by mother [], and it would not benefit the child to pursue reunification services with [mother]." This finding set forth supporting facts detailing I.H.'s 24 rib fractures in various stages of healing and two broken legs. Finding number 14 reiterated that reunification services would not benefit the minor and concluded: "Therefore, no reunification services are to be provided ... pursuant to [§ 361.5, subd. (b)(6)]."

The Agency's disposition report provides additional information highlighting the injuries sustained by I.H. and that mother "maintained throughout [I.H.'s] case as well as [M.A.'s] case that she does not know how [I.H.] incurred multiple fractured bones, bruises and other significant injuries." Further, mother failed to maintain contact with the social worker, did not engage in referred services, was terminated from drug court for failing to appear, and missed visits with the minor. Mother's decision to decline to participate in the reunification process left the Agency no choice but to recommend bypass. Thus, we are easily able to discern the multiple bases for the court's ruling applying section 361.5 subdivision (b)(6).

Upon examination of those bases, we conclude they are supported by substantial evidence. As to the first requirement that "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of ... the infliction of severe physical harm to the child, a sibling, or a half sibling by a parent or guardian, as defined in this subdivision" (§ 361.5, subd. (b)(6)(A)), the juvenile court took jurisdiction pursuant to section 300, subdivisions (b) and (j), and I.H.'s severe physical injuries--24 broken rib bones in various stages of healing and two broken legs--came to light when he was approximately seven months old. These injuries were nonaccidentally inflicted while mother was I.H.'s sole caregiver either through mother's direct action or omission by failing to protect I.H. from her boyfriend. Either way, this constitutes "severe physical harm" to a half sibling. (§ 361.5, subds. (b)(6)(A), (C).) Accordingly, we find it highly probable that a reasonable fact finder would find jurisdiction warranted due to severe physical injuries inflicted upon the minor's half sibling I.H. (*In re T.R.*, *supra*, 87 Cal.App.5th at p. 1150.)

We also have no difficulty concluding that a reasonable trier of fact could have found it highly probable that the minor would not benefit from reunification services with mother. (*In re T.R.*, *supra*, 87 Cal.App.5th at p. 1150.) Unlike M.A.'s case (*In re M.A.*, *supra*, C103159), here, mother informed the social worker via text message of her intention "to step back and take a break" and completely failed to engage in drug court, counseling, or parenting classes. Further, mother failed to consistently visit the minor, attend court, or communicate with the social worker. These facts abundantly support the juvenile court's finding that the minor would not benefit from reunification services with mother.

**DISPOSITION**

The judgment is affirmed.

/s/
DUARTE, Acting P. J.

We concur:

/s/
RENNER, J.

/s/
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17